CRAIG E. JOHNSRUD v. STATE,
DEPARTMENT OF EMPLOYMENT SERVICES.*

237 N. W. 2d 362.

December 5, 1975—No. 45478.

*Stephen D. Swanson*, Legal Aid Society of Minneapolis, Inc., for relator.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Peter C. Andrews*, Assistant Attorney General, and *Frank W. Levin*, Special Assistant Attorney General, for respondent.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Review on writ of certiorari to the Department of Employment Services of a decision of its commissioner that relator was ineligible for unemployment compensation benefits. We affirm.

Relator, 24 years old at the time of the hearing, is a high school graduate. He is unskilled and his employment experience consists

---

* Appeal dismissed, 425 U. S. 928, 96 S. Ct. 1657, 48 L. ed. 2d 171 (1976).

of general laborer jobs, both part time and full time. His last employment prior to applying for unemployment compensation was with Woodland Container Company. That work, which was full time, consisted of putting boards in a jig to make pallets and crates for packing refrigerators, stoves, and snowmobiles. His pay was about $2.80 per hour. Relator terminated his employment after being told by his foreman, who was apparently dissatisfied with relator's performance, to quit or be fired. He had been with Woodland Container for 11 months.

In order to upgrade his employment potential, relator enrolled in the Minneapolis Drafting School in an architectural and structural drafting course to acquire a skill he had desired to learn since the ninth grade.[1] The 18-month course, taught Monday through Friday from 7:30 a. m. to 1:30 p. m., commenced October 15, 1973. At the outset of this training, he undertook part-time work, but was subsequently forced to give it up because of the demands of his course.

On September 23, 1973, relator applied for approval of his training course with the Department of Employment Services so as to be able to receive unemployment compensation benefits. This application was denied November 7, 1973, the sole reason being the availability of reasonable and suitable work for which relator was suited by his training, experience, and physical capabilities. This work consisted of at least 17 jobs—some paying as much as $3.25 per hour—which were general, unskilled laborer positions, the only requirements for employment being the mental and physical ability to perform general labor. No special skill, training, or experience was necessary.

The issue on appeal is: May the Department of Employment Services, consistent with Minn. St. 268.08, subd. 1(3), deny ap-

---

[1] Relator entered military service following his graduation from high school, but did not acquire any usable job skills during his period of service. Following his discharge, he applied at Dunwoody Industrial Institute for training in drafting, but abandoned his application because of a lengthy waiting period.

proval of training for an unskilled worker, otherwise eligible for unemployment compensation, who is enrolled in training designed to increase his employability, because of the existence of unskilled-work opportunities in his locality?

The unemployment compensation system is an effort at co-operative federalism. The Federal government provides funds to the states for the administration of their compensation programs, 42 USCA, § 502, reimbursement for benefits paid under the Federal-State Extended Unemployment Compensation Act of 1970, 26 USCA, § 3304, and tax credits for state employers against the Federal unemployment tax, 26 USCA, §§ 3301, 3302. In return, the state must incorporate a number of federally created provisions into its compensation scheme, 26 USCA, § 3304, among them being that—

"compensation shall not be denied to an individual for any week because he is in training with the approval of the State agency (or because of the application, to any such week in training, of State law provisions relating to availability for work, active search for work, or refusal to accept work)." 26 USCA, § 3304(a)(8).

In 1971 the Minnesota Legislature incorporated the "approved training" exemption from disqualification into Minn. St. 268.08, the eligibility provisions of our unemployment compensation law, which provides, in part, as follows:

"Subdivision 1. An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

\* \* \* \* \*

"(3) He was able to work and was available for work, and was actively seeking work, \* \* \* *provided further that benefits after December 31, 1971, shall not be denied by application of this clause to an individual who is in training with the approval of the commissioner.*" (Italics supplied.)

Regulations governing the approval of training programs were

adopted by the Department of Employment Services October 26, 1971, and became effective December 10, 1971. Department of Employment Services Regulation ES 30. Among the requirements for approval is the following:

"An individual's enrollment in a training course shall be approved for the purposes of Sections 268.08 and 268.09 if the Commissioner finds:

"(1) Reasonable and suitable work opportunities for which the individual is fitted by training, experience and physical capabilities do not exist in his locality." Minn. Reg. ES 30(b)(1).

Relator's application for approval of his drafting course was denied on the basis of the above cited regulation. It was determined by the Department of Employment Services, and subsequently affirmed by the commissioner, that relator's experience equipped him for employment as an unskilled laborer and that jobs of that nature were available in his locality. Relator challenges this denial as being inconsistent with the Federal "approved training" exemption.

Relator takes the position that Congress intended the exemption to allow *unskilled* workers, otherwise entitled to unemployment compensation, to acquire a skill during periods of unemployment without loss of benefits, regardless of the existence of employment opportunities, thereby upgrading their potential for employment and diminishing the prospect of recurrent unemployment. Respondent denies any such intention on the part of Congress, or that Congress intended to impose any standards for approval of training on the states. Rather, respondent takes the position that Congress left the setting of standards solely to each state.

The briefs of the parties devote a good deal of discussion to the Supremacy Clause of the United States Constitution, which they believe controls any inconsistency between the commissioner's denial of approval and the Federal exemption provision. But it seems unnecessary to decide the case on that ground. If the commissioner's decision is inconsistent with the Federal "ap-

proved training" exemption, then it follows that it is similarly inconsistent with Minn. St. 268.08, subd. 1(3), which simply incorporated that exemption. That provision of our statutes seems to provide the proper basis for determining the validity or invalidity of his decision.

Both parties have referred extensively to the legislative history by citing from the *Congressional Record* and from printed records of hearings before congressional committees. There appear to be conflicting interpretations of that history. Relator argues very strongly that Congress intended the training provision to apply to all unskilled workers, irrespective of whether suitable jobs were available, while the state takes the position that Congress intended to allow each state, through its appropriate agency, to determine what programs were to be approved so that they would meet and be tailored to the particular needs of that state.

It would appear to us that relator has not sustained his burden of proof in his attempt to show that Congress intended the training provision, 26 USCA, § 3304(a)(8), to apply to all unskilled workers irrespective of whether suitable jobs are available and that it intended not to allow each state to establish standards for approval of training. What is troublesome, however, is that it would appear that the training provisions would never apply to an unskilled worker because, if one is suited for unskilled labor only, such jobs are almost always available.

Realtor has not raised any other constitutional questions as to whether the commissioner applied improper standards for eligibility.

The issue relator raises is one involving a policy change of such magnitude and importance, as well as possible cost, that it should be presented to the legislature, which is the appropriate policy-making body.

On the record before us, and absent a clear indication of any intent of Congress to establish a Federal standard, we must affirm.

Affirmed.