DEPENDENTS of Carl F. LEMKE, Deceased.

Jerald LEMKE and Stacey Lemke, Dependent Children, Relators,

and

Peggy Lemke, Dependent Widow, Respondent,

v.

KNUDSEN TRUCKING, INC., et al., Respondents.

No. 49798.

Supreme Court of Minnesota.

Feb. 1, 1980.

James F. Cannon, Compensation Atty., St. Paul, for relators.

Kent W. Speight, Red Wing, for Lemke.

John W. Romine, Minneapolis, for Knudsen Trucking, Inc., et al.

Heard before PETERSON, YETKA and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Dependent children appeal the Workers' Compensation Court of Appeals' decision that the total received by the children for dependency benefits plus survivor benefits shall not exceed the proportion of the weekly wage apportioned to them as between themselves and a surviving spouse who is not their natural mother and not residing with them at the time of the decedent's death.

We affirm in part, reverse in part and remand for recalculation of benefits consistent with our opinion in *Redland v. Nelson's Quality Eggs, Inc.*, 291 N.W.2d 371 (Minn. 1980).

The issues raised in this appeal are:

1. Where a wage earner dies, leaving his spouse and two children from a previous marriage who reside in separate households, how is the limitation in section 176.111, subdivision 21 (1976), to be calculated?

2. How, if at all, does the adjustment of benefits contained in Minn.Stat. § 176.645 (1978) apply to section 176.111, subdivision 21?

3. Where the employer-insurer has overpaid the claimant in good faith pursuant to orders of a compensation judge or the Workers' Compensation Court of Appeals, is the employer-insurer entitled to a credit against future workers' compensation payments?

In this case, the compensation judge found that Carl F. Lemke died on August 6, 1976, as a result of a truck/train collision arising out of his employment with Knudsen Trucking, Inc. His weekly wage was $219. He was survived by Peggy Lemke, his spouse, and Jerald Lemke and Stacey Lemke, his two children by a prior marriage to June Schmelzer with whom the children now live. The widow received no government survivor benefits from August 7, 1976, to December 31, 1976. She did receive Veteran's Administration (VA) benefits of $101.05 per month, or $23.32 per week, from January 1, 1977, to December 31, 1977. The VA benefits decreased to $92.38 per month, or $21.32 per week, from January 1, 1978, to the March 10, 1978, hearing date. The two children received combined social security and VA benefits as follows:

| | | |
|---|---|---|
| August 7, 1976 | – December 31, 1976 | – $132.79/week |
| January 1, 1977 | – October 31, 1977 | – 145.25/week |
| November 1, 1977 | – December 31, 1977 | – 124.11/week |
| January 1, 1978 | – March 10, 1978 | – 124.57/week |

The compensation judge allocated the $135 weekly workers' compensation benefits as follows:

*From August 7, 1976, to May 1, 1977:*
66⅔% to Peggy Lemke
33⅓% to the Lemke children

*From May 1, 1977, to March 10, 1978:*

50% to Peggy Lemke

30% to Jerald Lemke

20% to Stacey Lemke

The 66⅔% allocation to Peggy Lemke between August 7, 1976, and May 1, 1977, was an increase from the 50% allocation of the original dependency order. The compensation judge then interpreted the limitation of section 176.111, subdivision 21, to apply to each dependent separately. Therefore, since the combined total of government survivor benefits and workers' compensation benefits for each dependent was less than the $219 weekly wage, each dependent was awarded full workers' compensation benefits. However, the employer-insurer was allowed a credit against the children's benefits for the overpayments made to them between August 7, 1976, to May 1, 1977.

The Workers' Compensation Court of Appeals reversed the compensation judge. The allocation of workers' compensation benefits was changed to 66⅔% to the widow and 33⅓% to be divided equally between the children for all time periods since August 7, 1976. The court further interpreted section 176.111, subdivision 21, to mean that:

> the total received by any dependent for dependency benefits plus survivor benefits shall not exceed the proportion of the weekly wage apportioned to them, and that the total compensation plus governmental survivors benefits shall not exceed for all dependents combined the weekly wage of the deceased dependent employee at the time of injury resulting in his death.

The limit for Peggy Lemke is then 66⅔% of $219 and for the children it is 33⅓% of $219. With the adjustment pursuant to Minn. Stat. § 176.645, the court ordered workers' compensation payments as follows:

|  | Peggy Lemke | Jerald and Stacey Lemke |
|---|---|---|
| 8/7/76–9/30/76 | $ 90.00 | – 0 – |
| 10/1/76–9/30/77 | 96.89 | $3.44 |
| 10/1/77–3/10/78 | 102.70 | 6.34 |

The children appealed from this determination.

The situation in this case, distinguishing it from the *Redland* case, is that the decedent left children from a previous spouse, and these children were not living with his second spouse and the decedent at the time of his death. An initial question is whether the 1977 amendment to section 176.111, subdivision 21, is to be read into the 1976 version of the statute. It is well settled that the law in effect at the time of an employee's death governs the determination of maximum benefits for the dependents. *Sandal v. Tallman Oil Co.*, 281 N.W.2d 507, 509 (Minn.1979); *Yaeger v. Delano Granite Works*, 250 Minn. 303, 84 N.W.2d 363 (1957). However, workers' compensation is remedial in character, seeks to accomplish a humane purpose, and should be given a broad and liberal interpretation. *Christensen v. State, Department of Conservation, Game and Fish*, 285 Minn. 493, 175 N.W.2d 433 (1970). The object of all statutory construction and interpretation is to ascertain the intention of the legislature. *Id.*

In this case, the legislature could not have intended that a widow's workers' compensation benefits would be drastically reduced because of social security payments to children not financially supported by her. In most cases, a young surviving widow not residing with the surviving children would not receive any government survivor benefits and thus would fall outside of section 176.111, subdivision 21. Here, Peggy Lemke falls within the provisions because she receives Veterans Administration benefits. Mrs. Lemke's benefits should not be drastically cut because she receives a mere $23.32 per week in VA benefits. The 1977 amendment was meant only to clarify the meaning of Minn.Stat. § 176.111, subd. 21 (1976).

The next question is how to calculate the subdivision 21 limit without reducing Peggy Lemke's benefits on account of social security benefits received by the Lemke children. There are at least four possible methods of calculation. The first method is that used by the compensation judge. He compared the government survivor benefits received by each dependent to the $219 weekly wage

and found that each dependent could receive full workers' compensation benefits without exceeding $219. For example, for Peggy Lemke, (⅔ of $135) + $23.32 = $113.32, which is less than $219. The problem with this approach is that it utilizes three weekly wages when only one was lost. As discussed in *Redland*, this approach is not mandated by the term "any dependent" in section 176.111, subdivision 21.

The second method of calculation is that proposed by dependent children-relators. This method is to add up all the government survivor benefits received by the family, subtract that from the weekly wage, then proportion that amount according to the percentages set by the court of appeals with mandatory adjustment of benefits under section 176.645. As of January 1, 1977,

this would be expressed mathematically as follows:

$219.00
−145.25 (Children's benefits)
− 23.32 (Widow's benefits)

$ 50.43 (Maximum owed in workers' compensation benefits)

⅔ of $50.43 = $33.62 (owed to Peggy Lemke)
⅓ of $50.43 = $16.81 (owed to Lemke children)

The problem with this method is that it obviously does reduce the widow's benefits because of the children's government survivor benefits.

A third method is that used by the Workers' Compensation Court of Appeals. Their computations were based on the sensible proposition that Peggy Lemke was entitled to a limit of ⅔ of $219, or $146, and the children to ⅓ of $219, or $73. The court then calculated the workers' compensation benefits due accordingly:

### Schedules of Benefits Based on Apportionment of ⅔ Spouse and ⅓ Children

#### Compensation to Spouse — Appendix A

| Dates | Weeks | ⅔ of $135.00 | + Adjustment Per 176.645 | − Offset Per 176.111, 521 | Comp Rate | Total Benefits | |
|---|---|---|---|---|---|---|---|
| 8/ 7/76–9/30/76 | 78 | $90.00 | $–0– | $–0– | $ 90.00 | $ 702.00 | |
| 10/ 1/76–9/30/77 | 52.2 | 90.00 | 6.89 | –0– | 96.89 | 5,057.66 | |
| 10/ 1/77–12/31/77 | 13 | 90.00 | 12.70 | –0– | 102.70 | 1,335.10 | |
| 1/ 1/78–3/10/78 | 10 | 90.00 | 12.70 | –0– | 102.70 | 1,027.00 | $8,121.76 |
| 3/11/78–9/30/78 | 29.2 | 90.00 | 12.70 | –0– | 102.70 | 2,998.84 | |
| 10/ 1/78–12/31/78 | 13 | 90.00 | 18.86 | –0– | 108.86 | 1,415.18 | |
| 1/ 1/79–9/30/79 | 39 | 90.00 | 18.86 | –0– | 108.86 | 4,245.54 | |

#### Compensation to Children

| Dates | Weeks | ⅔ of $135.00 | + Adjustment Per 176.645 | − Offset Per 176.111, 521 | Comp Rate | Total Benefits | |
|---|---|---|---|---|---|---|---|
| 8/ 7/76–9/30/76 | 7.8 | 45.00 | –0– | 45.00 | –0– | –0– | |
| 10/ 1/76–9/30/77 | 52.2 | 45.00 | 3.44 | 45.00 | 3.44 | 179.57 | |
| 10/ 1/77–3/10/78 | 23 | 45.00 | 6.35 | 45.00 | 6.35 | 146.05 | $ 325.00 |
| 3/11/78–9/30/78 | 29 | 45.00 | 6.35 | 45.00 | 6.35 | 184.15 | |
| 10/ 1/78–12/31/78 | 13 | 45.00 | 9.43 | 45.00 | 9.43 | 122.59 | |
| 1/ 1/79–9/30/79 | 39 | 45.00 | 9.43 | 45.00 | 9.43 | 317.77 | |

The only problem with this method is that the children will receive some workers' compensation benefits when they are already receiving more than ⅓ of the adjusted weekly wage in social security and VA benefits. This method is relatively easy to compute, however.

■ We adopt a fourth method which adopts the basic reasoning of the Workers' Compensation Court of Appeals; namely, to find the proportion of the adjusted weekly wage allocated to each group and subtract the government survivor benefits paid to find the upper limit on workers' compensation benefits. The calculations are as follows:

Compensation to Spouse

| Dates | Adjusted Weekly Wage | ⅔ thereof | – | government survivor benefits | = | limit on compensation | available compensation | compensation due |
|---|---|---|---|---|---|---|---|---|
| 1/1/77– 9/30/77 | $235.64 | $157.10 | | $23.32 | | $133.78 | $ 96.89 | $ 96.89 |
| 10/1/77–12/31/77 | 249.78 | 166.52 | | 23.32 | | 143.20 | 102.70 | 102.70 |
| 1/1/78– 9/30/78 | 249.78 | 166.52 | | 21.32 | | 145.20 | 102.70 | 102.70 |
| 10/1/78–12/31/78 | 264.77 | 176.52 | | 21.32 | | 155.20 | 108.86 | 108.86 |
| 1/1/79– 9/30/79 | 264.77 | 176.52 | | Not in Record | | ? | 108.86 | ? |

Compensation to Children

| Dates | Adjusted Weekly Wage | ⅓ thereof | – | government survivor benefits | = | limit on compensation | available compensation | compensation due |
|---|---|---|---|---|---|---|---|---|
| 1/1/77– 9/30/77 | $235.64 | $78.55 | | $145.25 | | Surpassed | $48.44 | – 0 – |
| 10/1/77–10/31/77 | 249.78 | 83.26 | | 145.25 | | Surpassed | 51.35 | – 0 – |
| 11/1/77–12/31/77 | 249.78 | 83.26 | | 124.11 | | Surpassed | 51.35 | – 0 – |
| 1/1/78– 9/30/78 | 249.78 | 83.26 | | 124.57 | | Surpassed | 51.35 | – 0 – |
| 10/1/78–12/31/78 | 264.77 | 88.26 | | 124.57 | | Surpassed | 54.43 | – 0 – |
| 1/1/79– 9/30/79 | 264.77 | 88.26 | | Not in Record | | ? | 54.43 | ? |

■ For the period between 8/7/76 and 12/31/76, however, when Peggy Lemke received no government survivor benefits, workers' compensation benefits shall be calculated as in the *Redland* case. Since Peggy Lemke received no government survivor benefits for that period, she fell outside the scope of the section 176.111, subdivision 21, limit and should receive full workers' compensation benefits as follows:

| Dates | Available Compensation | Compensation Due |
|---|---|---|
| 8/7/76– 9/30/76 | $90.00 | $90.00 |
| 10/1/76–12/31/76 | 96.89 | 96.89 |

For this same period, therefore, the limitation of section 176.111, subdivision 21, applied only to the children, who did receive government survivor benefits. The benefits are calculated as follows:

| Dates | Adjusted Weekly Wage | – | government survivor benefits | = | limit on compensation | Available Compensation | Compensation Due |
|---|---|---|---|---|---|---|---|
| 8/7/76– 9/30/76 | $219.00 | | $132.79 | | $ 86.21 | $45.00 | $45.00 |
| 10/1/76–12/31/76 | 235.64 | | 132.79 | | 102.85 | 48.44 | 48.44 |

This fourth method of calculation would keep this case as consistent as possible with our decision in the *Redland* case and appears to us to carry out more fully the intent of the statute and is therefore adopted by this court.

The second issue in this case is a question of how the adjustment of benefits contained in Minn.Stat. § 175.645 (1978) should apply and has been fully explained and set out in our decision in the *Redland* case. The formula adopted in *Redland* has been applied in the fourth method of calculation by adjusting the weekly wage upward by the percentage set by section 176.-645.

The third issue raised in this case is: Where the employer-insurer has overpaid the claimant in good faith pursuant to orders of a compensation judge or the Workers' Compensation Court of Appeals, is the employer-insurer entitled to a credit against future workers' compensation payments? A decision on this issue involves the interpretation of the following statute:

*Payments of Compensation Received in Good Faith.* Notwithstanding section 176.521, subdivision 3, or any other provision of this chapter to the contrary, no lump sum or weekly payment, or settlement, which is voluntarily paid to an injured employee or the survivors of a deceased employee in apparent or seeming accordance with the provisions of this chapter by an employer or insurer, or is paid pursuant to an order of the workers' compensation court of appeals relative to a claim by an injured employee or his survivors, and received in good faith by the employee or his survivors shall be refunded to the paying employer or insurer in the event that it is subsequently determined that such payment was made under a mistake in fact or law by the employer or insurer.

Minn.Stat. § 176.179 (1978). The statute specifically states that good faith payments shall not be refunded. The narrow issue is whether a credit against future compensation payments is tantamount to a refund.

The legislature has recently spoken on this issue by adding the following amendment, effective date August 1, 1979, to section 176.179:

*When the payments have been made to a person who is entitled to receive further payments of compensation for the same injury, the mistaken compensation may be taken as a credit against future benefit entitlement; provided, however, that the credit applied against further payments of temporary total disability, temporary partial disability, permanent total disability, retraining benefits or death benefits shall not exceed 20 percent of the amount that would otherwise be payable.*

1979 Minn.Laws (extra sess.) ch. 3, § 49.

Although this amendment does not apply in this case, it supports our conclusion that a credit is not the same as a refund. The division may allow credits but should follow the spirit of the 1979 amendment by considering the minimum needs of the recipients while implementing any such credits. The recipients will normally be served best by a small percentage credit extended over a prolonged period of time.

Accordingly, the Workers' Compensation Court of Appeals is affirmed in all respects except as to calculation of benefits. We reverse only in the method of calculation and remand for the purpose of recalculating the benefits consistent with our opinion in the *Redland* case.

Respondent Peggy Lemke is allowed $400 in attorney's fees.