Ronald K. LOCKWOOD, Sr.,
Relator (51976),

v.

INDEPENDENT SCHOOL DISTRICT
NO. 877, et al., Relators (51931),

and

Blue Cross and Blue Shield of Minnesota,
intervenor, Respondent.

Horace Mann Life Insurance Company,
intervenor, Respondent.

Nos. 51931, 51976.

Supreme Court of Minnesota.

Dec. 4, 1981.

Van Eps & Gilmore, Michael D. Aafedt and Jay T. Hartman, Minneapolis, for Independent School Dist. No. 877, et al.

Meshbesher, Singer & Spence and Richard L. Cesario, Minneapolis, for Lockwood.

Indru S. Advani, St. Paul, for Blue Cross and Blue Shield of Minnesota.

Jardine, Logan & O'Brien and Louis R. Tilton, St. Paul, for Horace Mann Life Ins. Co.

SCOTT, Justice.

At issue for the first time before this court is whether the Minnesota Workers' Compensation Act affords compensation to an employee who suffers a disabling mental injury caused by work-related mental stress. The Workers' Compensation Court of Appeals ruled that it does and awarded employee temporary total disability benefits for 28 months. In the absence of a clearly expressed legislative intent that such an injury is compensable, we reverse.

The employee, Ronald K. Lockwood, Sr., was the principal of a senior high school located in Buffalo, Minnesota, from July 1973 until December 1976. From August to December of 1976, Lockwood was on a medical leave from his position. During this period, the Buffalo school district was one of the fastest growing in the state. According to Lockwood, this growth resulted in a significant increase in his duties between 1973 and 1976. These changes included: (1) problems with a new curriculum director; (2) increased student disciplinary problems; (3) the addition of a computer system; and (4) an increase in the size of the faculty. Lockwood stated that his average workday lasted until 11 p. m., with 1 to 1½ hours for dinner.

Lockwood testified that his work duties resulted in his feeling increasingly nervous. In January 1976, the pit of his stomach

constantly felt like a knot. Lockwood also began to lose weight and had problems sleeping. At the same time, Lockwood began to fall behind in his work. He stated that the outward manifestation of this increasing job pressure was his inability to control his temper. Lockwood used excessive physical violence in disciplining students. This problem was brought to his attention by two lower school principals in the same school building. According to Lockwood, these problems resulted in his taking an extended vacation during the summer of 1976.

Lockwood's problems were also observed by his stepson, who stated that Lockwood began to strike him over trivial incidents. In addition, one of the lower school principals testified that Lockwood had become short tempered with him and that he saw Lockwood slam a student into a wall.

While he was on vacation during the summer of 1976, a number of improprieties were discovered in invoices signed by Lockwood. This problem was brought to the attention of the superintendent of Independent School District # 877. Lockwood had used school district funds to make improper purchases of items unrelated to school business. When Lockwood returned to school in August of 1976, he was confronted with the problem by the superintendent. Lockwood agreed to return many of the items to the distributors, but used school district funds to pay for the postage. This action made the superintendent think that Lockwood was not in touch with reality. Thereafter, Lockwood agreed to take a medical leave of absence and never returned to work. On August 24, 1976, Lockwood began to see a psychiatrist.

After Lockwood left his job, the school board voted to conduct an audit to determine exactly what inappropriate purchases had been made. The audit resulted in Lockwood being indicted by a grand jury. The criminal charges were later dismissed.

Lockwood's treatment with the psychiatrist resulted in some improvement in his condition. In June 1977, Lockwood entered a specialty crop class at Suburban Hennepin Vocational Technical Institute. This retraining was approved by both the psychiatrist and a vocational advisor. In December 1978, Lockwood entered into a partnership with relatives and purchased 437 acres of farmland on which to conduct his farming operations.

The medical evidence presented at the workers' compensation hearing by two psychiatrists was in sharp conflict. Lockwood's psychiatrist testified that Lockwood suffered from a manic depressive disorder. This mental disease involves a cycle in which the patient is alternately euphoric, overactive, and grandiose, then depressed and despondent. The psychiatrist stated that there is a genetic predisposition to the disorder, but that stress triggers the biochemical reaction causing the disorder. He was of the opinion that the stress of Lockwood's job caused his mental disorder. On cross-examination, Lockwood's psychiatrist admitted that the legal proceedings against Lockwood complicated treatment, but was of the opinion that the process of the disease started in the spring of 1976, long before the legal problems.

Employer-insurer's psychiatrist testified that Lockwood's problem was a schizophrenic-type reaction. It was his opinion that Lockwood's illness was precipitated by the criminal action in the fall of 1976 and that it was not work-related. Employer-insurer's psychiatrist agreed, however, that Lockwood should not return to his position as principal.

Based on this evidence, the compensation judge concluded that Lockwood's psychological problems arose out of and in the course of his employment. Temporary total disability benefits were awarded from August 16, 1976, to December 17, 1978. The Workers' Compensation Court of Appeals affirmed. Both Lockwood and the employer-insurer seek review of the Court of Appeals' decision. Lockwood seeks review of the duration of the temporary total disability benefits. The employer-insurer seeks review of the Court of Appeals' determination that Lockwood had suffered his mental injury as a result of his job.

The salient issue presented is whether a mental injury caused by job-related mental stress without physical trauma is compensable under our workers' compensation act.

We recognize that coverage under this chapter has been extended to an employee disabled by a mental condition which was the consequence of a work-related physical injury. *See Hartman v. Cold Spring Granite Co.*, 243 Minn. 264, 67 N.W.2d 656 (1954). Coverage has been extended to the widow of an employee who suffered a heart attack which was the consequence of work-related mental stress. *See Aker v. State, Dept. of Natural Resources*, 282 N.W.2d 533 (Minn. 1979). The Court of Appeals could reasonably have concluded that to award compensation in this case represented a natural and logical progression from these decisions.

We recognize also that, while other courts have differed on the compensability of mental injury caused by work-related mental stimulus, the majority have held that such an injury is compensable. One court has so held upon proof that the employee had an honest, although subjective, belief that his mental injury was caused by work-related stress. *DeZiel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W.2d 1 (1978). The majority of courts holding that mental injury caused by work-related mental stress or strain is compensable have done so upon proof that the employee was exposed in his employment to stresses beyond the ordinary day-to-day stress to which all employees are exposed. *See, e. g., Townsend v. Maine Bureau of Public Safety*, 404 A.2d 1014 (Me.1979); *Albanese's Case*, 378 Mass. 14, 389 N.E.2d 83 (1979); *Swiss Colony, Inc. v. Department of Industry, Labor & Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976). Several courts have reached a contrary result based on their interpretation of particular statutory requirements. *See, e. g., Jose v. Equifax, Inc.*, 556 S.W.2d 82 (Tenn.1977); *Transportation Insurance Co. v. Maksyn*, 580 S.W.2d 334 (Tex.1979); *Erhart v. Great Western Sugar Co.*, 169 Mont. 375, 546 P.2d 1055 (1976).

Unquestionably, disablement resulting from a mental illness caused by mental stimulus is as real as any other kind of disablement. Nor do we quarrel with Professor Larson's position that there can be no medically valid distinction made between physical and nervous injuries. *See* Larson, *Mental and Nervous Injury in Workmen's Compensation*, 23 Vand.L.Rev. 1243, 1253 (1970). We are unwilling, however, to construe our statute as affording workers' compensation coverage for mental disability caused by work-related stress without physical trauma because we are unable to determine that the legislature ever intended to provide such coverage.

From 1913, when our first Workmen's Compensation Act was enacted, until 1953, compensation was payable for "personal injury or death * * * caused to an employe by accident arising out of and in the course of his employment." Minn.Stat. § 8195 (1913). "Accident" was defined as "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time, injury to the physical structure of the body." Minn.Stat. § 8230(h) (1913). These provisions were reenacted in a 1921 revision of the statute, Act of March 15, 1921, ch. 82, 1921 Minn.Laws 90, and remained substantially the same until 1953.

In 1953 the legislature again revised the compensation statutes. Act of April 24, 1953, ch. 755, 1953 Minn.Laws 1099. In apparent response to judicial construction, it eliminated both the requirement that an employee's injury be "caused by accident" and the statutory definition of "accident." Since July 1, 1953, the effective date of that revision, an employer has been liable for compensation "in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence." Minn.Stat. § 176.021, subd. 1 (1980). "Personal injury" was also redefined as "injury arising out of and in the course of employment and includes personal injury caused by occupational disease." Minn.Stat. § 176.011, subd. 16 (1980).

We are unable to determine, however, whether the legislature in enacting the

present law intended to impose on employers liability for compensation for an employee's disabling mental condition resulting from work-related mental stress. Under the prior law no employee had claimed compensation for such a disability, and it seems unlikely that the legislature contemplated the possibility of such claims when it enacted the 1953 revision. Undoubtedly, sound medical opinion can often relate mental injury to employment stresses, whether unusual or minor daily stresses. Until recently workers' compensation has not extended to such injuries, and historically health disability insurance has provided benefits for them. Reallocating the costs resulting from stress-related disability between health insurance and workers' compensation insurance is a major policy determination. In the absence of proof that the legislature considered the far-reaching ramifications of extending workers' compensation coverage to employees who are mentally disabled by employment-related stress, we decline to construe the Workers' Compensation Act in a manner probably not intended by that body. As in *Johnsrud v. State, Dep't of Employment Services*, 306 Minn. 295, 237 N.W.2d 362 (1975), the issue raised in this case involves a policy determination which we believe should be presented to the legislature as the appropriate policy-making body. If it wishes to extend workers' compensation coverage to mental disability caused by work-related mental stress without physical trauma, it is free to articulate that intent clearly. In the absence of a clearly expressed legislative intent on the issue, however, we will not hold such disability to be compensable.

Reversed.

YETKA, Justice (dissenting).

This court has continually held that the Workers' Compensation Act is remedial in nature and should be given a broad and liberal interpretation. *See, e. g., Dependents of Lemke*, 291 N.W.2d 378 (Minn.1980); *Radzak v. Mercy Hospital*, 291 Minn. 189, 190 N.W.2d 86 (1971); *Fink v. Cold Spring Granite Co.*, 262 Minn. 393, 115 N.W.2d 22

(1962); *Kaletha v. Hall Mercantile Co.*, 157 Minn. 290, 196 N.W. 261 (1923). This court's consistent approach has been to construe the act's provisions liberally in favor of the injured worker or his dependents. *See, e. g., Zak v. Gypsy*, 279 N.W.2d 60 (Minn.1979); *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977); *Morrison v. Merrick's Super Market, Inc.*, 300 Minn. 535, 220 N.W.2d 344 (1974); *Schneider v. Salvation Army*, 217 Minn. 448, 14 N.W.2d 467 (1944). We have explained: "[t]oo narrow a construction of that language is to be avoided where it results in excluding an employee from coverage, for the statute, as we have repeatedly stated, should be liberally construed to afford coverage in all cases reasonably within its purview." *Fischer v. Malleable Iron Range Co.*, 303 Minn. 1, 5, 225 N.W.2d 542, 545 (1975) (citations omitted).

The majority opinion recognizes that mental illness caused by mental stress is as real as any other disability. The majority also acknowledges that there is no medically valid distinction between physical and mental injuries. I would conclude that a mental disability caused by work-related mental stress is clearly within the purview of the definition of personal injury in Minn. Stat. § 176.011, subd. 16 (1980), and thus covered by the Workers' Compensation Act. Minn.Stat. § 176.021, subd. 1 (1980).

The Workers' Compensation Court of Appeals has agreed that mental injury caused by job-related stress is covered by the act. *See Applequist v. Insurance Company of North America*, 33 Minn. Workers' Comp. Dec. 245 (1980). We have already implied that such an injury is compensable. *See Hough v. Drevdahl & Son Co.*, 281 N.W.2d 690 (Minn.1979). The Wisconsin Supreme Court has followed the rule that this type of injury is compensable if the employee can show that he was exposed to stresses and strains beyond the ordinary day-to-day stresses and strains to which all the employees were exposed. *See Swiss Colony, Inc. v. Department of Industry, Labor and Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976). This is also the approach I would advocate for this court.

I would thus affirm for these reasons.