1996 SD 104

Raynita **EVERINGIM, Claimant and Appellant,**

v.

**GOOD SAMARITAN CENTER OF NEW UNDERWOOD, Employer and Appellee,**

and

**Constitutional State Service Company, Insurer and Appellee.**

No. 19389.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

Decided Aug. 14, 1996.

John J. Delaney of Estes, Porter & Delaney, Rapid City, for claimant and appellant.

Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for employer, insurer and appellees.

SABERS, Justice.

[¶ 1] The Department awarded Everingim worker's compensation benefits based on a mental disability resulting from post-traumatic stress disorder. The circuit court reversed. Everingim appeals. We reverse.

### FACTS

[¶ 2] Everingim comes from a dysfunctional family. She was subjected to sexual and emotional abuse. At age six, an uncle physically and sexually abused her. The abuse, which included intercourse, continued until she was fourteen years old.

[¶ 3] Everingim experienced additional stresses prior to beginning her employment. These stresses included the discovery that her brother had sexually abused her five-year-old son, the suicide of a friend, and her problem with gambling. The stresses resulted in nightmares, panic attacks, and suicidal tendencies, for which Everingim sought assistance through the Sioux Sanitarium Hospital in Rapid City.

[¶ 4] Everingim began work with Employer in September 1993 as a nursing assistant. Employer is a nursing home with approximately 50 patients requiring different levels of care. Beginning November 5, 1993, Everingim worked the evening shift. Her duties included getting the patients ready for dinner, feeding them, getting them ready for bed, and doing paperwork and laundry.

[¶ 5] Everingim spoke to her supervisor, Sarah Ellis, about her personal problems and testified she told Ellis that one of the patients, Andy, was a "nasty old man," but Ellis testified Everingim did not indicate her problems were work-related. Andy, a physically handicapped male, habitually grabbed, fondled, and pinched female personnel in sexual ways and made sexually oriented offensive comments. The nursing home staff and supervisors were aware of Andy's actions and told him his actions were offensive.

[¶ 6] Regarding the incidents with Andy, Everingim testified:

A: Andy had a real problem with touching people, trying to grab between their legs or their breast. Anyways, not only me, but it was ... almost every other female that would go in, he would do it to[.]

Q: This was actual grabbing?

A: Yes.

Q: Sexually oriented grabbing?

A: Or he'd say ... sexual things.

. . .

He'd say, "You like it. You like it. Why don't you let me feel you a little bit."

Q: Now was this a common occurrence with Andy?

A: Yes[.]

Q: And how often would it occur?

A: Almost every time you would go in there ... if you didn't watch his hands, he would do it.

[¶ 7] On December 18, 1993, Everingim and another nursing assistant were attempting to move Andy. Generally, Andy helped the nursing assistants by bearing some weight on his feet. However, on this occasion Andy grabbed Everingim between the legs and the other nursing assistant reprimanded him. Andy lifted his feet off the ground, which caused the nursing assistants

to bear his full weight.[1] Everingim hurt her back.

[¶ 8] Everingim sought medical treatment for her back injury from Dr. G.C. Abernathie, who diagnosed a lumbosacral strain. He prescribed medication and bed rest. Two days later, she saw Dr. Robert Preston, who concluded she had a low back strain, with gradual improvement. Dr. Preston released her to return to work, with restrictions on lifting and movement until December 28. Everingim did not give a copy of the work release to Employer and did not return for her follow-up appointment on December 28. On January 3, 1994, she returned to Dr. Abernathie, who also issued a release to return to work with the same restrictions. She again did not give a copy of the work release to Employer and did not return for her follow-up appointment on January 10, 1994. Everingim was also treated by Dr. J.D. Sabow and Dr. Dale Berkebile. Everingim did not indicate that she was having mental difficulties.

[¶ 9] On December 28, 1993, Everingim resigned from her position. Ellis testified she offered Everingim light duty work, which would fit within her work restrictions. Everingim indicated she was resigning because of Andy's conduct.[2]

[¶ 10] On March 30, 1994, and April 11, 1994, Everingim saw Dr. Frank Buzzetta. Buzzetta diagnosed post-traumatic stress disorder and depression, "technically called dysthymia, which is a longer term depression that's lasted for two or more years." Based upon his observations and testing, Buzzetta concluded Everingim was emotionally incapable of returning to work for any employer. Buzzetta stated that Everingim had repressed her prior abuse and problems,

> to make her somewhat functional, at least according to her, and ... after the incident at the Good Samaritan Nursing Home, or incidents, I should say, that this was like a boiler releasing all of the steam that was inside. It was just the last straw, if you will, that caused her to become much more emotionally agitated.

[¶ 11] The Department found Everingim's mental illness was caused or contributed to by the December 18, 1993 incident and ordered benefits. The circuit court reversed and remanded to the Department. Everingim appeals.

 [¶ 12] This case involves both factual and legal issues.

> We will overrule an agency's findings of fact only when they are clearly erroneous. *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D.1992) (citation omitted). "The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding." *Id.* at 723–24 (citing *Lawler v. Windmill Restaurant*, 435 N.W.2d 708 (S.D. 1989))....Great weight is given to the findings made and inferences drawn by an agency on questions of fact. *Kennedy v. Hubbard Milling Co.*, 465 N.W.2d 792, 794 (S.D.1991) (citation omitted).

*Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 879 (S.D.1994).

---

1. Everingim's testimony was as follows:
 [Steve, the other nursing assistant, came] in and we proceeded to lift [Andy] from the wheelchair to the bed, but in the meantime, he was trying to grab in between my legs and Steve was getting after him, telling him "Knock it off, Andy," and all this. And I was getting mad at him too because he had his good arm right between my legs, and I had my arm underneath his arm ... and then Steve was on the other side. And he had his hand between my legs, so I was saying, you know, trying to get him away and stuff. We'd go to lift him and Steve was getting after him.
 Well, then he made him mad because he normally helps with his feet and holding him ... and Steve saying to him to knock it off and me

saying that, he got mad and lifted both his feet up off the floor really fast, and when he did that, it jerked me off to my right and jerked Steve to his left, and we almost dropped him. Andy's knees were touching the floor instead of his feet, so Steve started jerking him back and so I did, too, and we twisted around and put him on the bed. And that's when I could feel my back, it just instantly hurt all the way up and down this side.

2. Ellis testified Everingim was reluctant to say she wanted to resign, but stated Andy "offended" her. When Ellis asked what she meant, Everingim told her, " 'He's touching private parts. I just don't want to have to deal with it.' "

**[¶ 13] 1. Whether there was sexual touching.**

■ [¶ 14] This is a question of fact, best determined by the Department. The question hinges on Everingim's testimony, which was live before the Department. The Department found: "On October 18, 1993, while attempting to move [Andy] with the assistance of another aide, Claimant was grabbed between her legs by [Andy]." The circuit court held that finding of fact was clearly erroneous and found that: "[Andy] *attempted* to grab Claimant between the legs while she was attempting to move him [and that] there was no physical injury as a result of that attempted grab." (Emphasis added.)

[¶ 15] Everingim's testimony, quoted above, establishes that Andy touched her between her legs. She stated: "[H]e was trying to grab in between my legs . . . he had his good arm right between my legs . . . he had his hand between my legs." Everingim was never asked whether Andy made physical contact with her leg or with any part of her body. However, from her testimony, there is substantial evidence to support the Department's finding that Andy grabbed her between the legs. The circuit court therefore erred in concluding the Department's finding was clearly erroneous.

**[¶ 16] 2. Whether Everingim's mental illness was caused or contributed to by the sexual touching.**

■ [¶ 17] " 'Issues of causation in worker's compensation cases are factual issues that are best determined by the Department.' " *Therkildsen v. Fisher Beverage*, 1996 SD 39, ¶ 8, 545 N.W.2d 834 (quoting *Lawler v. Windmill Restaurant*, 435 N.W.2d 708 (S.D.1989) (other citations omitted)).

[¶ 18] The Department stated: "Both [Everingim's] back injury and her subsequent mental deterioration as a result of that injury are compensable with the worker's compen-

sation statutes;" and, "As a consequence of her physical injury complicated by the ensuing mental injury[,] Claimant is temporarily and totally disabled and has been since March 30, 1994."

[¶ 19] The circuit court's findings of fact stated: "[T]he medical testimony of Dr. Buzzetta established that Claimant's mental problems did not arise out of or stem from the back injury sustained by the Claimant." The Department apparently concluded Everingim's mental illness resulted from her back injury. This is contradicted by Buzzetta, who testified that the mental problems did not stem from the back injury, but from the incidents with Andy and Everingim's history. The back injury and the injury Everingim suffered from Andy's repeated attempts to touch her are two separate injuries.

[¶ 20] Buzzetta testified that Everingim "indicated that about a week after she started working on the floor she began to experience more nightmares than she had in the past," and that she had panic attacks and couldn't repress memories as she had in the past. When asked about the significance of the "episodes" to which she was exposed at Employer's place of business, Buzzetta stated that, "after all the incidents . . . this was like a boiler releasing all of the steam that was inside. It was just the last straw[.]"

[¶ 21] Buzzetta was asked whether other factors, including discovery of her son's abuse and the suicide of her friend, played a role in her symptoms. He stated that they were all contributory and continued: "It's kind of like stress. People can handle an awful lot of stress until all of the sudden the last straw . . . and then they seem to fall apart." He noted that Everingim appeared functional in September, but "started decompensating over time," and "more and more, got fearful of going to work for fear of having to deal with this patient." [3]

---

3. Buzzetta was also asked:
 Q: [That patient] would make efforts to touch her in the private parts . . . is that correct?
 A: That's correct.
 Q: And in your experience is that an event that is so outside the range of usual human experience that it would be markedly distressing to almost anyone?

 A: Who had the history that she did, yes.
 Q: [B]ut if you throw out the history, there's nothing markedly distressing about that, is there?
 A: I think there is. We would be minimizing it to say otherwise.

[¶ 22] Employer points out that Everingim had prior mental problems and that other factors in her life contributed to this mental illness. This is supported by Buzzetta's testimony. However, Buzzetta also testified that Everingim was "functional" prior to the incidents at Employer's place of business and that the incidents were the "last straw," leading to her emotional agitation. Everingim was able to perform the duties of her job until the sexual touching began. Following the touching, Everingim "started decompensating over time."

[¶ 23] Everingim gave sufficient testimony on which to base her claim that sexual touching by Andy caused or contributed to her mental illness. However, because the Department found her mental disability resulted from her back injury, we remand for appropriate findings of fact.

[¶ 24] **3. Whether the mental illness caused by the sexual touching is compensable.**

[¶ 25] Professor Larson identifies three categories of mental and nervous injury:

1. Mental-physical: "The first category is that in which a mental ... impact or stimulus results in a distinct physical injury. Here the decisions uniformly find compensability."

2. Physical-mental: "[W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable."

3. Mental-mental: "In each of the two above categories, there is something to satisfy the old-fashioned legal insistence upon something 'physical.' However, an increasing number of cases have appeared in a third category, involving a mental or emotional stimulus resulting in a primarily 'nervous' injury."

1B Larson, Workmen's Compensation Law, §§ 42.20–42.23 at 7–813 to 7–876.

[¶ 26] This court has addressed the third category, mental disabilities produced by mental stimuli, in *Lather v. Huron College,* 413 N.W.2d 369 (S.D.1987). Lather was a college basketball coach who dealt with disciplinary problems, stolen equipment, and threats. He developed a mental disorder and was hospitalized. He then resigned from his position. He was asked to voluntarily commit himself to the Human Services Center for inpatient treatment. While being transported to the Center, Lather jumped out of the moving car and received serious physical injuries. The *Lather* majority indicated nothing in the workers' compensation statutes implied an intention to provide coverage in mental-mental cases. *Id.* at 372.

[¶ 27] Here, the Department awarded Everingim benefits, concluding that "[b]oth her back injury and her subsequent mental deterioration as a result of that injury are compensable[.]" We have noted that Everingim's mental deterioration is due to the sexual touchings by Andy.

[¶ 28] Larson's discussion of physical-mental injuries indicates the issue should be: Whether the sexual touching and sexual comments were sufficient to become a "physical trauma" which caused the mental injury. In effect, the Department said yes. The circuit court said no. The circuit court noted that Everingim's mental difficulties began prior to the December 18 incident and that, "after some exposure to this behavior (that being the attempts to grab by Andy), Claimant began to suffer mental distress, nightmares and panic attacks as a consequence." Everingim did not complain about her mental problems when she was being treated for the back injury. When she quit her job, she stated it was because of Andy's conduct, but not specifically the incident on December 18.

[¶ 29] The Department's decision stated, "Dr. Buzzetta described the December 1993 incident as the 'last straw,' which caused Claimant to feel invaded not only mentally and emotionally, but physically as well. This goes beyond the mental trauma suffered by the employee in *Lather.*" In contrast, the circuit court concluded her injuries resulted from a stressful environment, like *Lather.* However, Everingim's claim differs from

Lather's. She suffered a series of physical, sexual touchings. The final attack occurred when she was not in a position to protect herself because she was doing her job, lifting a patient who took advantage of her helpless situation. When she attempted to thwart the attack, her back injury resulted. This physical attack is different than the stresses encountered by Lather, which did not include physical contact with his body. This differs also from cases of incidental or accidental touching. This attack was sexual in nature when the victim was unable to protect herself from one who knew his touching was offensive. Therefore, the sexual touching experienced by Everingim is a physical incident which places her into the "physical-mental" category defined by Larson.

[¶ 30] The *Lather* court relied on the Minnesota Supreme Court's decision in *Lockwood v. Independent School District No. 877*, 312 N.W.2d 924 (Minn.1981), where it was held that mental disabilities resulting from job-related stress were not compensable. However, Minnesota allows compensation for physical-mental cases. *Lockwood*, 312 N.W.2d at 926. Everingim's claim is more like *Dotolo v. FMC Corporation*, 375 N.W.2d 25 (Minn.1985). There, an employee suffered from depression caused by tinnitus, a "subjective feeling of head noise that cannot be demonstrated by objective findings." *Dotolo*, 375 N.W.2d at 27. The tinnitus was caused by noise to which the employee was exposed on the job, and was diagnosed by two otolaryngologists. *Id.* The employer argued *Lockwood* controlled the case because the employee's resulting depression could not be linked to a physical injury. The *Dotolo* court disagreed, stating: "Neither the lack of objective findings nor the absence of a compensable permanent partial hearing loss furnishes reason to conclude that tinnitus is not a physical trauma[.]" *Id.*

[¶ 31] The Minnesota Supreme Court also allowed compensation for mental problems suffered by a waitress who was slapped by a customer even though no "organic" injury occurred. *Mitchell v. White Castle Systems, Inc.*, 290 N.W.2d 753, 756 (Minn.1980).

[¶ 32] The Supreme Court of Wyoming addressed workers' compensation claims by two employees based on offensive touching by a co-worker. *Baker v. Wendy's of Montana, Inc.*, 687 P.2d 885 (Wyo.1984). The claimants were touched on the breast and buttocks by the co-worker. The *Baker* court found the touching was physical trauma, considered it under the physical-mental category, and found it compensable. *Baker*, 687 P.2d at 891. Wyoming had already recognized compensation for mental-mental cases. *Id.*

[¶ 33] The Tennessee Supreme Court addressed an assault on an employee in *Beck v. State*, 779 S.W.2d 367 (Tenn.1989). Beck was working as a driver's license examiner when a man "came up behind her, grabbed her tightly around the waist with one arm, and whispered in her ear, 'I want sex, sex, sex,'" then left. *Beck*, 779 S.W.2d at 369. Beck suffered from anxiety "to a point that she could not do her job correctly." *Id.* She was diagnosed with post-traumatic stress disorder, linked to a rape she suffered ten years earlier, which was "'jarred to a head'" by the incident. *Id.* She was hospitalized and released, but did not return to work. *Id.* Beck was awarded benefits. The *Beck* court recognized that emotional stress was compensable when the claimant could, with some specificity, show an occasion which "constitutes the accident." *Id.* at 370. The *Beck* court pointed out:

> The circumstances of the present case do not fall within the category of everyday stress and strain as found in [two prior Tennessee cases]. Plaintiff in the case at bar ... can point to a specific, acute, sudden, and unexpected stressful event precipitating her injury. Plaintiff was accosted and physically grabbed by a stranger. Such a sexual assault is not an everyday workplace occurrence and is not within the scope of "stress or strain of daily living[.]"

*Id.* In this case, Everingim was subjected to attacks which Dr. Buzzetta testified would be "markedly distressing" to anyone.[4]

[¶ 34] Finally, Employer argues whether Everingim was subjected to sexual touching or comments is irrelevant because this court

4. See n. 3 *supra*.

determined in *Lather* that no recovery was allowed for such injuries. We disagree. The *Lather* court addressed a very narrow issue: Whether "mental disability produced *solely* by mental stimuli or stress [is] compensable under our worker's compensation law." *Lather*, 413 N.W.2d at 371 (emphasis added). The *Baker* court stated:

> Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, psychotic, depressive, or hysterical symptom, functional overlay, or personality disorder, have accepted this rule.

*Baker*, 687 P.2d at 891 (quoting *Larson, supra*, § 42.22). Everingim's symptoms fit this category. Under these facts, Everingim is entitled to receive workers' compensation benefits under the physical-mental category.[5]

[¶ 35] We reverse and remand to the circuit court for disposition consistent with this opinion.

[¶ 36] AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 37] MILLER, C.J., concurs specially.

MILLER, Chief Justice (concurring specially).

[¶ 38] Although I concur with the majority writing, I write specially to note and emphasize the limitations of our decision in this case. It is important to point out that in the wake of this decision workers' compensation will not subsume all workplace sexual harassment claims. Clearly, only harassment involving physical assaults that result in disabling physical or mental injuries fall within the scope of our workers' compensation law. Where an employee simply suffers distress or embarrassment as a result of nonphysical harassment, the appropriate forum is through discrimination claims or common-law tort actions. However, where the offensive workplace conduct is predominately physical and results in physical injury or disabling mental illness, workers' compensation is an appropriate remedy to pursue.

---

5. We note that the 1995 Legislature may have limited the "window of opportunity" for claimants with physical-mental injuries. SDCL 62–1–1(7)(b) provides:

> If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment or need for treatment.

For example, if the sexual touching combined with a claimant's preexisting depression to cause the disability, the resulting mental problems would be compensable only if the employment-related injury (the sexual touching) "*is and remains*" a "*major contributing cause*" of the mental disability. This would appear to limit the number of cases compensable under the physical-mental category.