**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED** as to Plaintiff's ADA and MHRA claims.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's § 290.140 R.S.Mo. claim.

Marina **PICKETT**, Plaintiff,

v.

The **COLONEL OF SPEARFISH**, **Joseph Oleinik, and Tim Morris, Defendants.**

No. Civ.99–5106.

United States District Court, D. South Dakota, Western Division.

Aug. 24, 2001.

Steven M. Johnson, Matthew T. Tobin, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD, Carol A. Pahlke, Rapid City, SD, for Marina Pickett.

Michael C. Loos, Johnson, Eiesland, Quinn, Huffman & Clayborne, Rapid City, SD, Jeremy D. Michaels, Michaels & Michaels, Gillette, WY, Michael William Day, Day, Morris & Schreiber, LLP, for The Colonel of Spearfish, Joseph Oleinik.

Clerk, U.S. Court of Appeals, St. Paul, MN, for pro se.

### ORDER

BOGUE, Senior District Judge.

Pending before this Court is the Defendants' Motion for Summary Judgment [doc # 69]. All briefing has been received and this matter is now ripe for disposition.

### *FACTUAL BACKGROUND*

When deciding a motion for summary judgment, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. This statement does not represent actual findings of fact; it is given simply to place the Court's legal analysis within the confines of a specific

case or controversy. *Frix v. Florida Tile Industries, Inc.*, 970 F.Supp. 1027, 1030 (N.D.Ga.1997).

The Plaintiff, Marina Pickett, began working at the Colonel of Spearfish ("Colonel") in September 1996. Pickett was promoted to shift supervisor in approximately March 1998. Rick Jones, the primary alleged perpetrator of the sexual harassment; who is not a party to this suit, was hired as the assistant manager at the Colonel in 1996. Dan Morris, the second alleged perpetrator of the sexual harassment; also not a party to this suit, was the manager of the Colonel.

Prior to the alleged incidents that gave rise to this suit, Jones was accused by two other female employees, Kate Brogdon and Cheyenne Loper, of committing acts of sexual harassment that included improper comments and unwelcome touching. Letters were sent by Brogdon and Loper to Joseph Oleinik, the owner of the Colonel, complaining of the conduct of Jones. Oleinik claims he investigated the incidents and caused a reprimand to be given to Jones.

In August 1997, Pickett alleges Jones began to sexually harass her through inappropriate sexual comments and unwelcome touching. Pickett states she complained to Dan Morris in February 1998, however, Dan Morris does not recall such a complaint. Pickett claims she confronted Jones about his conduct, but that the conduct continued. Jones was married in February of 1998, allegedly to the disappointment of Pickett. Pickett alleges the harassment increased after Jones's return from his honeymoon in March of 1998.

Pickett alleges that she once again reported the inappropriate conduct of Jones to Dan Morris in May 1998, but once again there is no record of this complaint. Sometime thereafter, in the month of May, Pickett alleges that while she was in the process of closing the Colonel, Jones appeared in the break room doorway. Pickett alleged that Jones, who was not on duty, made advances towards her and prevented her from exiting the room. The confrontation was said to have escalated when Jones allegedly grabbed Pickett, forced her against the wall, took down her pants, and proceeded to rape Pickett while she was pinned against the wall. Pickett does not recall the exact date or day of the week that the alleged rape took place. This alleged rape was not reported to law enforcement or anyone else until sometime in December 1998.

Pickett alleges that she complained to Dan Morris about Jones conduct on May 22, 1998, but further states she did not inform him of the alleged rape. She further alleges that during this meeting Dan Morris then unexpectedly kissed her. Dan Morris denies ever meeting with or kissing Pickett on May 22nd. Pickett did not inform anyone that Dan Morris had allegedly kissed her until after she raised this action.

Numerous employees of the Colonel; Micheal Brozik, Tilly Divan, Cassandra Lobbestal, Erica Wrightsman, Nichol Lebeau, Trisha Davis, Mary Blaha, Jayme Bunney and Kala Russell, have testified that Pickett and Jones were very flirtatious with one another and frequently hung out together both on and off duty. Pickett denies these allegations.

On or about August 10, 1998, Victoria Hothem complained to Dan Morris that Jones kissed her on July 24, 1998. This was Hothem's first and only complaint about Jones. Hothem sent a letter to Oleinik on August 11, 1998, complaining of Jones' behavior. Oleinik responded with a letter to Hothem followed by a prompt investigation. Jones admitted to kissing Hothem and he was terminated on or before August 14, 1998. Other complaints concerning Jones came forward after the

Hothem letter to Oleinik, none of which came from an employee who had previously complained about Jones.

Pickett continued to work at the Colonel until December 11, 1998. She began working at GreenTree n/k/a Conseco Finance on the following Monday, December 14, 1998. She states she left the Colonel for a step up in her work career. Pickett had used Dan Morris as a reference on her application to GreenTree.

In late December, during an argument where the couple broke up, Pickett told her ex-fiancé/boyfriend of the alleged rape by Jones. Pickett also told her parents of the rape. Pickett and Hothem consulted an attorney who filed a Charge of Discrimination with the South Dakota Division of Human Rights and with the EEOC on February 17, 1999.

On September 10, 1999, after an investigation by the State of South Dakota Division of Human Rights, a Determination of No Probable Cause was issued. Pickett filed the pending suit on December 29, 1999.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can be shown "that there is no genuine issue as to any material fact and that (the movant) is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court has instructed that "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 486.

### DISCUSSION

In their motion for summary judgment, the Defendants' have argued that (1) Pickett cannot satisfy the second and fourth elements of a Title VII cause of action; (2) Jones was not a supervisor of Pickett, so strict liability of the employer does not apply; (3) if Jones was a supervisor, no tangible employment action occurred to Pickett, so the *Faragher* affirmative defense prevails; (4) the Defendants did not know nor should have known about the sexual harassment; (5) the claims of Dan Morris's conduct are not actionable under Title VII; (6) South Dakota Worker's Compensation Exclusivity Statute precludes the actions for negligent retention and negligent supervision; (7) the claims

of battery and intentional infliction of emotional distress are not cognizable against these Defendants; (8) South Dakota's Worker's Compensation Exclusivity Statute precludes the state law intentional tort claims; (9) Pickett is not entitled to punitive damages as a matter of law; (10) Pickett failed to exhaust her administrative remedies; and (11) there is insufficient evidence of a rape to survive summary judgment. Extensive depositions have been taken in this action with the testimony expectedly varying wildly. Numerous persons testified to similar sexual harassment from Jones; and similarly, numerous persons testified that Pickett and Jones had a close, potentially romantic relationship. For purposes of this motion, this Court need not address the merits to any of these statements.

### STATE LAW CLAIMS

The Defendants have argued that South Dakota's Workers' Compensation statutes preclude an action by Pickett. SDCL 62–3–2 states:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

The South Dakota Supreme Court recently analyzed this exclusivity statute in *Benson v. Goble,* 1999 SD 38, 593 N.W.2d 402 (1999). In *Benson,* an employee was repeatedly physically assaulted by his supervisor while on duty. The South Dakota Supreme Court held that SDCL 62–3–2 barred Benson from recovering in a state law suit. *Id.* 593 N.W.2d at 406. South Dakota has recognized two categories of

compensable mental or emotional injury under Workers' Compensation; mental-physical and physical-mental. A so-called mental-mental injury—a purely non-physical action which leads to mental or emotional injury, is not compensable under Workers' Compensation, however, that situation is not present to this action.

■ A physical-mental injury is defined as an injury which was the result of physical touching sufficient to become a "physical trauma" which caused a mental injury. *Id.* at 405 · (citing *Everingim v. Good Samaritan Center,* 552 N.W.2d 837, 841 (S.D.1996)). As was the case in *Benson,* a physical-mental injury has allegedly occurred in this action. Pickett claims she was repeatedly sexually assaulted which escalated into a rape by Jones. She further alleges that this pattern of behavior has resulted in mental and emotional damages. Pickett also claims physical injury and compensatory damages as a result of these assaults. The merits of these claims need not be addressed to reach a conclusion because, even if the disputed facts alleged by Pickett are accepted as true, state law prevents recovery in this action.

■ Pickett has alleged claims of negligent retention, negligent supervision, battery, and intentional infliction of emotional distress. All of these state law claims fall under the auspices of the Workers' Compensation statutes' physical-mental injury. Pickett has argued that the intentional tort exception to SDCL 62–3–2 applies in this circumstance because Dan Morris and Jones were the alter ego of the Colonel. The undisputed evidence before this Court is that neither person, while being managers at the Colonel, had sufficient control or were so pervasive in the operation of the Colonel to be considered the alter ego of the company. Foremen, managers, and supervisors do not normally possess the characteristics of the alter ego of a corpo-

ration. No facts have been asserted which can support a different finding in this action. South Dakota has adopted the rational that:

> Unless the employer has commanded or expressly authorized an assault, it cannot be said to be the intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has the right to consider exclusively covered by the compensation system.

Larson, Workers' Compensation Law § 68.21(b) at 13–123.

There has been no allegation that Tim Morris or Joseph Oleinik commanded or expressly authorized the alleged sexual harassment of Pickett. In fact, there is no evidence that either owner knew or could have known of the alleged incidents. The undisputed fact is that Pickett did not follow the proper procedure to place either owner of the Colonel on notice of any harassment; and further, did not reveal any allegation to the ownership until the action was filed with the state of South Dakota some seven months after its alleged occurrence. No evidence has been produced which would indicate that either partner committed any intentional act complained of in the Complaint. The only alleged intentional actors are curiously not named in this suit. Oleinik and Tim Morris are simply not liable for the alleged acts of Jones and Dan Morris which took place outside the scope of the business of selling fried chicken.

South Dakota state law bars these claims and this Court must abide by the state law in which it sits. While Oleinik knew of the prior alleged sexual harassment Jones had committed upon Brogdon and Loper, neither partner could be substantially certain that harm would come to Pickett. In fact, when the proper complaint procedure was followed by Hothem, Jones was terminated before he ever returned to work. The controlling law in this state is set forth in *Benson* and this Court finds this action to be nearly perfectly analogous to that action, therefore, this Court reaches the identical result.

## TITLE VII CLAIM

■ Assuming for purposes of this motion that the allegations of Pickett are true, Pickett has failed to establish a viable claim against the Colonel, Oleinik, and Tim Morris.

> In order to state a claim for sex discrimination based on a hostile environment, a plaintiff must show that: (1)[she] belongs to a protected group; (2)[she] was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the employer] knew or should have known of the harassment and failed to take proper remedial action.

Excerpt from: *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1377 (8th Cir.1996).

■ The Defendants' have seriously questioned elements two, four and five of Pickett's claim. While issue two is definitely in dispute, there is no question in this Court's mind that Pickett did not suffer a tangible employment action. Pickett claims to have been constructively discharged from the Colonel. Constructive discharge occurs when an employer creates work conditions so intolerable that the employee is forced to resign. *Smith v. Goodyear Tire and Rubber Co.*, 895 F.2d 467, 472 (8th Cir.1990). Further, Pickett must establish that a reasonable person would find the conditions unbearable and that the employer intended these condition to result in the employee terminating employment. *Smith v. World Insurance Co.*, 38 F.3d 1456, 1461 (8th Cir.1994).

■ By her own sworn admission, Pickett has testified that she worked some four months after the termination of Jones. She was not forced to quit, she did not feel like she had to quit, she quit for a better job (including higher pay and benefits) and a step up in her life. She even used Dan Morris as a reference to acquire her new job, and further, she offered to work at the Colonel part time over the holidays. A party is not allowed to claim a better version of the facts more favorable to herself in an attempt to avoid summary judgment. *Anderson v. Production Credit Ass'n*, 482 N.W.2d 642, 648 (S.D.1992). There is a complete lack of facts such as those in *Ogden v. Wax Works, Inc.*, where the employee had a raise withheld and was forced to quit to avoid further harassment, which would illustrate an adverse tangible employment action. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1003–04.

■ Pickett has raised a novel claim that her mental state is a tangible adverse employment action. This Court has been unable to find any precedent for this claim in this or any other circuit. She does not assert that her job performance suffered in any manner as a result of Jones's or Dan Morris's actions and clearly, no economic loss has been demonstrated. Therefore, this Court must reject this argument.

Despite this fatal failing of Pickett's complaint, there is yet another reason for dismissal of her suit; the employer did not know nor should have been reasonably aware of the sexual harassment. It is undisputed that the Colonel had in place policies and procedures for addressing sexual harassment on the job. Other employees had utilized these procedures in the past and did so after Pickett's alleged harassment. Pickett has admitted she was aware that an EEOC statement, an Employee Awareness Hotline poster; and a Department of Labor 5–in–1 poster are on display at the Colonel. Further, she admits she was given a training guide, entitled *In the Lead* when she was promoted to shift manager which contained further policies on sexual harassment in the workplace. Pickett admits, without persuasive explanation, that she did not follow the procedures that were in place at the Colonel when she was allegedly harassed.

Pickett alleges she informed Dan Morris of her problems with Jones, however, this was not the proper procedure. The posters on display at the Colonel stated that Tim Morris was the contact person for sexual harassment complaint, however, Oleinik had handled complaints directed to him. This simply was not done by Pickett. Pickett, however, alleges that Dan Morris and Jones were supervisors, thereby providing the link to the company through vicarious strict liability. The flaw in this argument is that first, Jones was not a supervisor for Title VII purposes of Pickett, and second, Dan Morris's alleged actions are clearly insufficient to be considered sexual harassment.

■ Jones lacked the authority to hire, fire, promote, or discipline Colonel employees. While Jones did wear a shirt and tie to work and not a company uniform, his duties were of a task master, not a supervisor. Since it cannot be established that Jones was a supervisor, his conduct cannot be imputed upon the Defendants and the dismissal of the claim is proper.

■ The alleged sexual harassment performed by Dan Morris consisted of a one-time kiss. Pickett states that she told Dan Morris this was unacceptable and that it never occurred again. Dan Morris denies the kiss ever took place. In turn, Dan Morris claims he had a brief, week-long consensual relationship with Pickett beginning in mid-July 1998, three weeks after the alleged kiss. Pickett denies this relationship even took place. In any event, Pickett never complained of the kiss until

her administrative complaint, seven months later.

Under a totality of the circumstances view, a one time kiss is not "severe and pervasive conduct" that alters the conditions of employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The fact that Pickett remained working at the Colonel for an additional seven months, used Dan Morris as a reference to attain her new employment, and offered to work part-time at the Colonel again, if needed, firmly demonstrates that the alleged conduct was not serious enough to be actionable under Title VII.

 Lastly, even if this Court accepted the claim that Jones and Dan Morris were supervisors of Pickett, recovery is prevented because the Defendants' have proven an affirmative defense to this action. The Defendants' have claimed the right to the affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This affirmative defense has two elements; that the defendant exercised reasonable care to prevent and promptly correct sexual harassment, and the plaintiff unreasonably failed to take advantage of the corrective measures available. *Id.*

As stated earlier, the Colonel had in place policies and procedures for handling sexual harassment. These policies and procedures were put into effective use through the Hothem complaint, the immediate investigation, and the prompt firing of Jones some three months after the alleged rape of Pickett. Pickett has failed to produce conclusive evidence that the policies and procedures were not available to her or that they were somehow ineffective.

The record is undisputed that Pickett did not utilize the procedures available at the Colonel. Pickett states she did not approach Tim Morris with her complaint of Dan Morris's actions because of the family relationship between the Morris's. This in no manner explains why she did not inform Oleinik about Dan Morris's behavior or why Jones's prior actions were not reported to either Tim Morris or Oleinik. Clearly, if Dan Morris was part of the problem, Pickett should have followed the procedures and brought her complaint to either or both owners of the Colonel. It is undisputed that Pickett did not complain of Jones's actions under the proper procedure before the alleged improper act of Dan Morris despite the fact that the harassment had allegedly been ongoing from August of 1997 to May of 1998. Surely a reasonable person, if not receiving satisfactory response from her complaints to Dan Morris, would have sought to complain to the owners of the company, however, Pickett did not do so. Under the preponderance of the undisputed evidence standard, this Court finds the Defendants have made good faith efforts to comply with Title VII and that Pickett unreasonably failed to take advantage of the system. Therefore, the Defendants are entitled to prevail under the *Faragher* affirmative defense.

### CONCLUSION

As thoroughly explained in this opinion, the Defendants are entitled to summary judgment in their favor. The state law claims brought by Pickett are barred under South Dakota's Workers' Compensation exclusivity statute, SDCL 62–3–2, and the intentional tort exemption to that statute does not apply. *See Benson*, 593 N.W.2d 402. Further, Pickett's Title VII claim fails for a multitude of reasons including lack of a tangible adverse employment action, failure of vicarious liability, and the *Faragher* good faith compliance affirmative defense. While there are serious questions as to whether the events described in the complaint ever took place and in the manner that they may have taken place, these factual questions are not

relevant to the resolution of the legal questions involved in this law suit. Therefore, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that this action be **DISMISSED WITH PREJUDICE.**