**Sheila Denise DeBOW, Appellee,**

v.

**FIRST INVESTMENT PROPERTY, INC. and Integon Indemnity Corporation, Appellants.**

Supreme Court of Tennessee.

Nov. 9, 1981.

---

1. *E. g., Estell v. City of Birmingham*, 291 Ala. 680, 286 So.2d 872 (1973); *Kirtley v. State*, 227 Ind. 175, 84 N.E.2d 712 (1949).

Luther E. Cantrell, Jr., Smith, Davies, Smith & Cantrell, Nashville, for appellants.

R. Jan Jennings, Branch H. Henard, Branstetter, Kilgore & Stranch, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an appeal by an employer and its insurance carrier from a judgment awarding the employee worker's compensation benefits that included a fifteen percent permanent partial disability to the body as a whole. Appellants' five assignments of error raise the single question: Is there material evidence to support the trial judge's finding that the employee sustained a disabling injury in the course and scope of her employment. We are of the opinion that there is, and affirm the judgment of the trial court.

Shelia Denise DeBow was employed by the First Investment Property, Inc. as the resident assistant manager of Hunting Brook Apartments in Nashville, Tennessee. As such, her duties consisted of typing leases, filing, interviewing applicants for apartments, general housekeeping problems, complaints, and accepting rent payments. The terms of Ms. DeBow's employment required her to work specified office hours daily and, in addition, to be "on call" on alternate weeks to handle complaints and emergencies. When "on call," Ms. DeBow could move freely about the apartment complex and do whatever she normally would do in her off-duty hours, but she could not leave the apartment complex for any period of time longer than five minutes. Ms. DeBow was required to keep with her at all times a "beeper," which enabled the apartment answering service to locate her when she was needed to respond to calls or complaints made to the apartment management. On weekends, Ms. DeBow was required by her employer to keep rent monies in her possession, awaiting opening of the banks on Mondays, since there were no lock-boxes or other secure areas in the apartment complex.

At the time of her employment, and for several weeks thereafter, Ms. DeBow represented to her employer that she was married to Mickey A. Brown, who lived with her in the apartment furnished under her employment contract. Subsequently, Ms. DeBow informed her employer that she was not married. The employer took no disciplinary action but permitted the live-in arrangement to continue.

Some six weeks after Ms. DeBow began working for Hunting Brook, it was brought to her attention, and to the attention of her immediate supervisor and Mr. Messer, who employed Ms. DeBow, that Brown had in his possession articles that had been stolen from a tenant of Hunting Brook. Difficulties concerning this incident caused a breakup of the relationship between Brown and

Ms. DeBow, with Ms. DeBow moving to a new apartment in the complex and management serving notice on Brown to vacate the apartment where he was living. Approximately three weeks after the separation, Ms. DeBow began dating Gene Hedrick, a resident of Hunting Brook.

Brown delayed leaving the apartment complex for some six weeks, even though under pressure of management to leave immediately. On Sunday, October 21, 1979, Ms. DeBow was on duty in the office at Hunting Brook until 5:00 p.m. and was "on call" that evening. In the later part of the afternoon, Ms. DeBow lent Brown the keys to her automobile to facilitate his move from the Hunting Brook Apartments. Brown returned the keys without incident. Later Brown returned to the apartment office, carrying a beer. Ms. DeBow directed Brown to leave the office, since apartment rules prohibited the drinking of beer in the office. At this time and in Brown's presence, Ms. DeBow put the rent monies in her purse, preparatory to closing the apartment office.

On closing the apartment office, Ms. DeBow returned to her apartment in company with her parents, who invited her to have dinner with them outside the apartment complex. Miss DeBow declined the invitation since she was "on call" and could not leave the apartment complex. Furthermore, she had a dinner engagement with Mr. Hedrick in his apartment.

Thereafter, Ms. DeBow called Hunting Brook's answering service to check to see if there were any calls, picked up her "beeper" and went to Mr. Hedrick's apartment. She took her purse and the rent monies with her.

While Ms. DeBow was eating, Mr. Hedrick left the apartment to investigate a noise or disturbance outside the apartment. Almost immediately, Brown was in Hedrick's apartment and assaulted Ms. DeBow with a knife, stabbing her numerous times. Ms. DeBow thought she heard Mr. Brown say he was going to kill her. She then fell to the floor of the apartment and "played dead," until Brown left the apartment. As soon as Brown left, Ms. DeBow secured help from tenants in nearby apartments, and was transported to the hospital in an ambulance.

Ms. DeBow's supervisor, Erma Wingate, went immediately to Hedrick's apartment to look for the rent monies and found that the envelope containing rent payments had been removed from Ms. DeBow's purse and had been torn open. Checks given in payment of rent were still in the envelope, but all cash had been taken.

■ As noted in *Bell v. Kelso Oil Co.*, 597 S.W.2d 731 (Tenn.1980), injuries that result from a willful assault upon an employee present one of the most difficult cases for determination whether such injuries arise out of and in the course of employment. There is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not. *Bell v. Kelso Oil Co., supra.* But generally, an injury arises out of and in the course of the employment if it has a rational, causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury "arose out of the employment" is to be resolved in favor of the employee. *Bell v. Kelso Oil Co., supra; Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn.1979); *Great American Indemnity Company v. Friddell*, 198 Tenn. 360, 280 S.W.2d 908 (1955); *Tapp v. Tapp*, 192 Tenn. 1, 236 S.W.2d 977 (1951).

■ In this case, pointing to the past relationship between Brown and Ms. DeBow, appellants argue with a degree of logic that the true motive of the assault on Ms. DeBow was personal vengeance on the part of a discarded lover and, consequently, there was no connection between the assault and the work required of Ms. DeBow. This motive fits every major element of proof, except the fact that the rent money was taken after the assault. Noting this fact, the trial judge concluded that robbery was a purpose of the assault on Ms. DeBow. He also found that there was a causal con-

nection between the conditions under which Ms. DeBow was required to perform her work and the resulting injury, and that the injury resulted from a hazard or risk incident to her employment. The basis of this latter finding evidently was the fact that Ms. DeBow was required to remain constantly in the apartment complex over the weekend and to retain in her personal possession rents paid by tenants, a fact known to her assailant. In our opinion the evidence supports the trial judge's findings.

The judgment of the trial court is affirmed, and the cause is remanded for the enforcement of the judgment and for any further orders which may be necessary. Costs incident to the appeal are adjudged against appellants and their surety.

HARBISON, C. J., and FONES, BROCK and DROWOTA, JJ., concur.