Suzanne JESSE, Plaintiff–Appellee,

v.

SAVINGS PRODUCTS, Dodge's Store, Henry Oil Company, and USF & G Insurance Company, Defendants–Appellants.

Supreme Court of Tennessee, at Nashville.

May 30, 1989.

Julia F. Smith, Daniel, Harvill, Batson and Nolan, Clarksville, for defendants-appellants.

Cleveland C. Turner, Clarksville, for plaintiff-appellee.

## OPINION

DROWOTA, Chief Justice.

In this worker's compensation case, the employer and its insurance carrier appeal from the Chancellor's award of benefits for a mental disability incurred when Plaintiff was raped on the premises of her employer's convenience market. Defendants insist the injury did not arise out of the employment and also complain that the permanence of the disability was not proven by competent medical opinion. For the reasons that follow, the judgment of the trial court is affirmed in part and the case is remanded for further proceedings.

The facts surrounding the assault are not disputed. In July 1985 Plaintiff was hired as a part-time clerk at Defendant's convenience market on Highway 41A near Fort Campbell. Shortly thereafter she accepted a full-time position on the 11:00 p.m. to 7:00 a.m. shift. Ordinarily the night clerk worked alone, and Plaintiff was the only employee in the store in the early morning hours of October 30, 1985. One customer was in the store when a man she had never seen before entered through the front door. After the first customer left, the second one approached her and laid a sandwich on the counter. When she rang up the purchase the cash drawer of the register opened, and she told him the price of the sandwich. The man became angry, and when Plaintiff backed away he jumped over the counter and chased her into the storeroom. Her persistent efforts to lock the storeroom door and to escape through an outside entrance were futile. Threatening to kill her, the man succeeded in committing the rape. A passerby reported the disturbance, and the police arrived while the attack was still in progress. The assailant was apprehended as he attempted to escape, and ultimately he was convicted of the assault. No money or other property was taken from the store.

The parties view subsequent events differently. Plaintiff received emergency medical attention immediately, but suffered no significant physical injury. After several nights off work, all but one of which had been previously scheduled, she returned to train a replacement for the night shift. She was then assigned to a day shift, during which the store manager was also on duty.

Plaintiff testified she experienced difficulty sleeping and found it difficult to meet customers coming into the store. Several months later she obtained a bookkeeping job where she was situated in an inner office with another employee. When reduced business caused a decrease in her hours she found part-time work as a loan processor with a mortgage company in August 1986. Within a few months she was promoted to a position as a loan officer, which requires her to solicit real estate agents to send their clients to her for real estate financing.

Plaintiff testified that since the rape her difficulty meeting and dealing by herself with people she does not know has caused problems in her work as a loan officer. Much of her work involves taking loan applications from people she does not know and she needs to be available to do this during evenings and weekends, when no one else is in her office, because that is when most people look at and decide to buy a home. Since she is fearful of dealing with new people alone, she must ask real estate agents she knows to let her take the applications at their offices.

Defendant elicited proof of previous difficulties in Plaintiff's life, implying apparently that any present disabilities are not caused by the trauma of the assault.

By deposition two psychologists opined that Plaintiff suffers from continuing, or

chronic, post-traumatic stress syndrome as a consequence of the rape. Both had conducted clinical interviews and standardized tests with Plaintiff. Dr. Kenneth Anchor recommended long term individual psychotherapy. From assessment of her skills and data about available employment, he concluded Plaintiff had a permanent disability that precluded her from 42 or 47 percent of the jobs available to her before the rape. Dr. Evelyn Frye recommended short term individual therapy and group therapy at a rape and sexual abuse center. In her opinion, Plaintiff's remarkable coping abilities had overcome any occupational impairment resulting from the trauma. It appears her opinion is based entirely on the fact that Plaintiff has continued to find work, her status is "professional," and her income is now greater than it was at the time of the rape. She conceded Plaintiff should not resume work that entails exposure to the general public.

█ The compensability of assaults in the work place has been the subject of numerous decisions of this Court. The crux of Defendants' argument in this case is that an employee so injured must show an employment-related motive on the part of the assailant and that a rape, standing alone, suggests a personal motive. Our decisions are to the contrary.

The motive of the assailant is only one of the circumstances to be considered in determining whether the injury arises out of the employment, and its weight depends on the strength of other inferences raised by the proof. Thus, we have held that a clear animus toward the workplace supported coverage when other factors appeared ambiguous or neutral. See *Bell v. Kelso Oil Company*, 597 S.W.2d 731 (Tenn.1980) and *Whaley v. Patent Button Company*, 184 Tenn. 700, 202 S.W.2d 649 (Tenn.1947). We have also held that a motive purely personal to the injured employee, inflicted by an acquaintance, can be sufficient to preclude coverage. *E.g., White v. Whiteway Pharmacy*, 210 Tenn. 449, 360 S.W.2d 12 (1962). When the motives were both personal and employment-related, we resolved the issue in favor of coverage. *DeBow v. First In-*

*vestment Property*, 623 S.W.2d 273, 275 (Tenn.1981).

But this is not to say that the assailant's motive is always determinative or that an injured employee must always establish a stranger's motivation in order to connect the assault with the employment.

This case requires only an application of the "street risk" doctrine, which we adopted in *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn.1979). In that case a truck driver was shot by unknown assailants as he climbed into the cab of his employer's truck. No property was taken. No direct proof of motive was present. We held that knowledge of the assailants' motive for the "senseless" attack was not a proper basis upon which to determine compensability, but in any event the employee's visible identification with his employment and his responsibility as custodian of his employer's valuable property provided a sufficient nexus between the assault and the employment. *Id.* at 603. It was not unreasonable to infer an intent to steal under those circumstances.

█ Obviously Plaintiff here was custodian of her employer's valuable property and was visibly identified as such. As the trial judge noted, "No one knows the full intent of the culprit," but whether he was interrupted before he could carry out a theft or whether he became outraged at the price of the food or whether the assault was even more irrational, the Plaintiff's indiscriminate exposure to the general public is one of the conditions under which her work was required to be performed, and the actions of those persons on the premises are reasonably considered hazards of the employment.

In this context we see no reason to except rape from the general category of assaults or to view it differently than we view a shooting, which occurred in the *Hudson* and *Whaley* cases, or a stabbing, which occurred in the *DeBow* and *Bell* cases. As a means to intimidate or to disable an employee from protecting property, as an expression of hostility to the workplace, or as an unexplained act of violence, rape parallels other forms of physi-

cal coercion. We reject any suggestion that forcible sexual assault by a stranger connotes romance or attraction.

■ Plaintiff concedes the permanence of her disorder was not shown by expert medical opinion, but asks the case be remanded under the authority of *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452 (Tenn.1988) and *Floyd v. Tennessee Dickel Distilling Company*, 225 Tenn. 65, 463 S.W.2d 684 (1971). We observe that this subject is one upon which the trial court is authorized to order an independent examination, T.C.A. § 50–6–204(d)(5) (Supp.1988). Given this authority and the well-supported findings on the cause and degree of Plaintiff's vocational disability, we remand the case so that a physician's opinion on the duration of the disability can be sought and presented to the trial court.

Costs of this appeal are taxed to Appellants.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.