**Carolyn BECK, Plaintiff/Appellee,**

v.

**STATE of Tennessee, Defendant/Appellant.**

Supreme Court of Tennessee, at Knoxville.

Oct. 30, 1989.

**368**

Stephen W. Gibson, Knoxville, for plaintiff/appellee.

Charles W. Burson, Atty. Gen. and Reporter and Elizabeth R. McCarter, Asst. Atty. Gen., Nashville, for defendant/appellant.

## OPINION

DROWOTA, Chief Justice.

In this workers' compensation case, the employer, the State of Tennessee, appeals from the Claims Commission's award of benefits for a mental disability incurred when Plaintiff, a driver's license examiner, was assaulted on the premises of her employer's Driver's License Testing Center. The State insists that the assault was not a sufficiently acute, sudden, or unexpected emotional stress to support the finding of "injury by accident" and argues that the assault did not arise out of Plaintiff's employment. For the reasons that follow, we affirm the judgment of the Claims Commission.

The Commissioner awarded Plaintiff 30% permanent partial disability to the body as a whole. Our review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e). "This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." *Humphrey v. Witherspoon*, 734 S.W.2d 315 (Tenn.1987).

The facts surrounding the assault are not disputed. On Friday, August 7, 1987, Plaintiff, Carolyn Beck, was working as a driver's license examiner for the Tennessee Department of Safety at an office on Fifth Avenue in Knoxville. An unknown man entered the office between 1:30 and 2:30 that afternoon and asked Plaintiff's supervisor and a co-worker, "Where is that mean old Carolyn?" When told that Plaintiff was out giving a road test, the man turned

and began talking to a license applicant's father.

After a short time, Plaintiff entered the office and announced that a car improperly parked near the entrance needed to be moved. The man who had asked for her earlier began walking towards her and indicated that the car was his. Plaintiff testified that the man started to put his arm around her shoulder as they were walking toward the door but that she stepped away from him and walked outside to give a road test to a waiting applicant. After Plaintiff got outside, however, the man came up behind her, grabbed her tightly around the waist with one arm, and whispered in her ear, "I want sex, sex, sex." Plaintiff turned, pulled away, and kicked at the man, and he jumped in his car and left. Plaintiff testified she was "in shock" after the incident, but was able to complete her shift.

Over the weekend, Plaintiff called her supervisor at home twice to talk about the incident. The Plaintiff testified that the more she thought about it, the more she felt that her attacker was a man who had been parked across the street from her office on the afternoon before the attack. Plaintiff had called the police to have them investigate the car, and one of the investigating officers testified that the man in the car was close enough to hear a radio conversation with the police dispatcher identifying "Carolyn at the examiner's office" as the person who had called the police. But apart from this and Plaintiff's testimony that her attacker fit the general description of the man the day before and was driving an "old black car" like the one the day before, there was no evidence that the two men were one and the same, and the Commissioner was not convinced that the two incidents were related.

On Monday the Plaintiff returned to work and asked her supervisors for referral to a psychiatrist to discuss the incident. On Wednesday she was referred and taken by the area supervisor to a counselor at a mental health clinic; however, Plaintiff felt the advice she received there was impractical given the circumstances of her work place. Plaintiff continued working for

three weeks after the assault, but testified that her anxiety continued to increase to a point that she could not do her job correctly. She testified that three weeks after the assault, on Friday, August 28, 1987, she was standing at the back of a car talking to an applicant's mother when a jeep parked next to them backfired and she "started shaking and fell apart," which she reported to the area supervisor before leaving work early. Over the weekend, Plaintiff called her immediate supervisor at home to tell her that she needed to go back to the doctor and would not be in for work Monday. Upon the supervisor's insistence, however, Plaintiff reported for work Monday, developed a severe headache, and called her personal physician, Dr. Prince, that evening. Dr. Prince saw her the next morning and admitted her to the hospital for the remainder of the week, where she was also seen by Dr. Luttrell, a psychiatrist. She did not return to work following the hospitalization, and her employment was terminated in January 1988 when the State refused to let her return to work on a restricted basis with time off on Wednesdays and Thursdays for regular sessions with her psychiatrist.

Dr. Luttrell testified by deposition that he diagnosed Plaintiff's condition as a post-traumatic stress disorder, linked to a rape she suffered ten years earlier and aggravated or "jarred to a head" by the incident on August 7, 1987. He admitted that "[t]he predisposing thing may have been the rape," and that anxiety over the relocation of her workplace three years earlier to a neighborhood she perceived as dangerous appeared to have "considerable impact" on her job performance so that her stress "was building" before the assault in August 1987. The doctor testified, however, that Plaintiff suffered a permanent emotional impairment as a result of the workplace assault.

■ Defendant does not dispute the finding that Plaintiff was sexually accosted by an unknown man in the course of her employment. Defendant denies, however, that the August 7, 1987 assault was a compensable "accident" within the meaning

of the workers' compensation laws, arguing instead that the incident was "within the bounds of emotional stress common to most contracts of employment."

There is no requirement under the Tennessee Workers' Compensation Laws that an accident be either physical or traumatic in nature. *See Cabe v. Union Carbide Corp.*, 644 S.W.2d 397, 399 (Tenn.1983). This Court recognized in *Jose v. Equifax*, 556 S.W.2d 82, 84 (Tenn.1977), that "a mental stimulus, such as fright, shock, or even excessive, unexpected anxiety could amount to an 'accident' sufficient to justify an award for a resulting mental or nervous disorder." In *Jose*, the claimant alleged a severe psychiatric illness resulting from work stress of a general nature. Because the claimant did not allege any specific stressful incident, this Court affirmed the trial court's dismissal for failure to state a claim, noting that the statutory definition of accident "still does not embrace every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment." *Jose*, 556 S.W.2d at 84.

In *Allied Chemical Corp. v. Wells*, 578 S.W.2d 369, 372 (Tenn.1979), this Court again stressed that the term "injury by accident" should not be limited to cases where some physical or traumatic injury is shown, emphasizing that "some acute, sudden, or unexpected emotional stress directly attributable to employment" and precipitating a heart attack would constitute a compensable accidental injury. The claimant in *Allied*, however, was not able to point to any unusual or sudden stressful, shocking, or frightening event leading to his heart attack; therefore, this Court denied recovery, holding that worry, anxiety, or emotional stress of a general nature are not, by themselves, sufficient to establish an accident.

This Court has recognized emotional stress to be a compensable accident when the claimant alleges with some specificity the occasion which constitutes the accident. In *Cabe v. Carbide Corp.*, 644 S.W.2d 397, 399 (Tenn.1983), a worker suffered a heart attack and died after a heated argument with a co-worker concerning the use of safety goggles. The Court held that the confrontation, although not involving physical injury or exertion, was stress of such an acute, sudden, and unexpected nature to constitute an "accident" within the meaning of Workers' Compensation Laws. Likewise, in *Black v. State*, 721 S.W.2d 801, 803 (Tenn.1986), this Court held that a worker's heart attack preceded by an argument with a superior about vacation time was a compensable injury resulting from a workplace accident.

The circumstances of the present case do not fall within the category of everyday stress and strain as found in *Allied* and *Jose*. Plaintiff in the case at bar, like the claimants in *Cabe* and *Black*, can point to a specific acute, sudden, and unexpected stressful event precipitating her injury. Plaintiff was accosted and physically grabbed by a stranger. Such a sexual assault is not an everyday workplace occurrence and is not within the scope of "stress or strain of daily living" envisioned by *Jose*. We hold that the August 7, 1987 assault was a compensable accidental injury.

■ Defendant argues that *Clevenger v. Plexco, Div. of Amstead Industries*, 614 S.W.2d 356 (Tenn.1981) compels a different result. In *Clevenger*, the Plaintiff alleged that an unexpected and undeserved reprimand by his supervisor was an accident causing the plaintiff's nervous breakdown. Testimony at trial revealed, however, that the reprimand consisted simply of the foreman telling the plaintiff that he had to improve within a couple of weeks. This Court affirmed the trial judge's finding that other factors, unrelated to employment, led to the plaintiff's nervous breakdown. The State argues that *Clevenger* compels us to determine that other factors caused plaintiff's psychological impairment in the case at bar. We decline to do so. Though there was evidence that Plaintiff's psychological condition predisposed her to suffer a disability as a result of the attack, there was no evidence that Plaintiff's job performance was affected by her psychological condition before the assault, and

there was medical testimony that Plaintiff's emotional impairment was the result of the August 7, 1987 incident. An employer takes an employee as he finds him, and assumes the risk that an employee with a weakened condition may be aggravated by some injury which might not affect a normal person. *Blalock v. Williams,* 483 S.W.2d 578 (Tenn.1972); *Harlan v. McClellan,* 572 S.W.2d 641 (Tenn.1977).

■ Defendant also argues that the assault did not "arise out of" Plaintiff's employment. Generally, an injury arises out of and in the course of employment if it has a rational, causal connection to the work and occurs while the employee is engaged in the duties of his employment; any reasonable doubt as to whether an injury arose out of the employment is to be resolved in favor of the employee. *DeBow v. First Investment Property,* 623 S.W.2d 273 (Tenn.1981); *Bell v. Kelso Oil Co.,* 597 S.W.2d 731 (Tenn.1980); *Hudson v. Thurston Motor Lines, Inc.,* 583 S.W.2d 597 (Tenn.1979).

This Court recently addressed the question of whether a workplace assault by a stranger arises out of employment. In *Jesse v. Savings Products,* 772 S.W.2d 425 (Tenn.1989), a worker was raped by a stranger on the premises of her employer's convenience store. The Court, in holding that the assault arose out of the worker's employment, recognized that while an employment-related motive on the part of an assailant is usually proof that an injury by assault arose out of the employment, "the assailant's motive is not always determinative" and the employee need not always establish the stranger's motivation in order to connect the assault to the employment. *Jesse,* 772 S.W.2d at 427. The Court in *Jesse* acknowledged that, though the full intent of the assailant could never be known, whether the attack was employment-motivated or simply an irrational act of violence "the Plaintiff's indiscriminate exposure to the general public is one of the conditions under which her work was required to be performed, and the actions of those persons on the premises are reason-

ably considered hazards of the employment." *Jesse,* 772 S.W.2d at 427.

In the case at bar, the assailant had access to Plaintiff because her workplace was open to the public. While there is no evidence that the assailant was there for any business reason, the evidence shows that the assailant attacked Plaintiff after she, as a duty of her employment, asked the assailant to move his improperly parked car. Just as no one could ever know the full intent of the assailant in *Jesse,* no one will ever know the full intent of Plaintiff's assailant. But, as in *Jesse,* Plaintiff's indiscriminate exposure to the general public was one of the conditions under which her work was required to be performed, and the actions of persons on those premises can be considered a hazard of the employment. We therefore find a causal relationship existed between Plaintiff's employment and the August 7, 1987 assault, and that Plaintiff suffered a compensable accidental injury within the statutory definition of the Tennessee Workers' Compensation Laws.

We do not find that the evidence preponderates against the findings of the Commissioner and his judgment is accordingly affirmed. The costs are adjudged against the Appellant.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.