FILED

May 26, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:29 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

| | | |
|---|---|---|
| Eden Johnson, | ) | Docket #: 2014-06-0069 |
| Employee, | ) | State File #: 85475/2014 |
| v. | ) | Date of Injury: October 28, 2014 |
| Wal-Mart Associates, Inc., | ) | Chief Judge Switzer |
| Employer, | ) | |
| and | ) | |
| Claims Mgmt., Inc., | ) | |
| Carrier/TPA. | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on April 23, 2015, upon the Request for Expedited Hearing filed by the Employee, Eden Johnson (Ms. Johnson), on April 8, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Wal-Mart Associates, Inc. (Walmart), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Johnson is entitled to medical benefits and past temporary total disability benefits[1], but is not entitled to ongoing temporary disability benefits at this time.

## ANALYSIS

### Issues

*Whether Ms. Johnson sustained an injury arising primarily out of and in the course and scope of her employment with Walmart.*

*Whether Ms. Johnson is entitled to medical benefits, and past or future temporary total disability benefits[2].*

---

[1] The Court concludes that Ms. Johnson is entitled to past temporary total disability, but does not order the specific sums Walmart owes Ms. Johnson because the parties did not introduce, and the Court did not admit, a wage statement into evidence.

[2] The Dispute Certification Notice and attachments list several more issues for determination, but at the Expedited Hearing, the parties agreed on the record that these were the central issues before the Court at this time.

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Medical records of Eden Johnson:
   - Dr. Marcus Min, October 29, 2014-November 11, 2014 (8 pages)
   - Dr. Jon Draud, November 22, 2014 (2 pages)
2. CD of three (3) videos of the incident from Walmart's security camera
3. Walmart Interview Summary & Witness Statement, December 15, 2014 (3 pages)
4. "Medical Bills & Expenses for Eden Johnson," marked for identification only, (8 pages)
5. "NAO (New Associate Orientation) Participant Checklist," January 7, 2014 (2 pages)
6. "Total History for EDEN JOHNSON," (1 page)
7. People greeter job description, May 28, 2014 (2 pages)
8. "Coaching for Improvement" (3 pages)
9. Ms. Johnson's Second Written Warning (2 pages)
10. "Violence-Free Workplace Policy," January 6, 2014 (2 pages)
11. "Wal-Mart Stores, Inc. EXIT INTERVIEW" (1 page)
12. State of Tennessee Separation Notice (1 page)
13. Walmart Witness Statement (1 page).

The Court designates the following as the Technical Record:

- Petitions for Benefit Determination (PBD), November 26, 2014, and December 1, 2014[3]
- Employee's position statement, November 25, 2014, and December 19, 2014
- Employer's position statement, December 22, 2014
- Dispute Certification Notice, December 23, 2014
- Order, April 8, 2015
- Request for Expedited Hearing, April 8, 2015
- Employer's Brief Opposing Employee's Petition for Benefit Determination and Motion to Dismiss Petition for Benefit Determination (including "Evidence Exhibit List" and "Table of Contents"), April 22, 2015
- Walmart Counsel's e-mail to the Court striking its Motion to Dismiss, May 22, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

---

[3] For unknown reasons, Ms. Johnson filed two, substantially identical PBDs.

2

The following witnesses provided in-person testimony: Ms. Johnson, Jay Sizemore and Diana Henry. All witnesses viewed the video evidence (Ex. 2) at the hearing before testifying.

## History of Claim

Ms. Johnson is a seventy-six (76) year-old resident of Davidson County, Tennessee. The incident giving rise to her injury, which is the subject of this claim, occurred on October 28, 2014, while she worked as a greeter for Walmart. She alleged on her PBD that she "was struck by patron." Three (3) Walmart security videos, which do not contain audio, recorded the events surrounding the incident and the incident itself, in part. In the lower right-hand corner of video one, Ms. Johnson is shown following a customer, Evelyn Darden, on foot as Ms. Darden rode a motorized shopping cart (mart cart or motorized cart). Ms. Johnson grabbed the back of the mart cart with her right hand and the handlebar with her left hand, prior to Ms. Darden turning around and striking her. Ms. Johnson fell to the floor from the blow. Videos two and three, shot from different angles, show Ms. Johnson conversing with Ms. Darden prior to the physical assault, but not the assault itself.

Ms. Johnson testified that she received no specialized training for her position as a greeter. It was her understanding that her duties were to:

> [G]reet people, make them feel good about, you know, being part of the Walmart family. And then I had to watch the – I had to take care of the carts because they were very expensive, and I should, um – several managers, as well as the top manager, Mr. Mark Morgan, told me that, um, these, um, carts are only for disabled people.

Ms. Johnson testified that she did not know Ms. Darden, and never received formal training regarding how to interact with a customer who is not disabled and attempts to use a motorized cart. She said that another supervisor, "Anthony," told her to tell people they should not use the carts because they are only for disabled persons. According to Ms. Johnson, customers often disregarded her admonition, so that she would contact Anthony to handle the situation. After a while, however, Anthony told her to do it herself.

Ms. Johnson testified that she did not intentionally grab or harm Ms. Darden, but rather, she told her she should not use the mart cart because she is not disabled. According to Ms. Johnson, Ms. Darden said, "Don't worry about it. Call a manager." Ms. Johnson agreed to do so upon the condition that Ms. Darden wait for her return. Ms. Darden did not wait but began to use the mart cart when Ms. Johnson turned away. Ms. Johnson testified that, in an attempt to stop Ms. Darden from using the mart cart, she grabbed the back of the mart cart, but she never touched Ms. Darden. Per Ms. Johnson, Ms. Darden said, "Don't touch my

3

hair." However, Ms. Johnson denied touching her hair; rather, Ms. Darden moved her head on her own accord. Ms. Johnson said she was trying to do her job as she understood it. Ms. Darden proceeded to strike her in the face, knocking her unconscious.

Ms. Johnson testified that an ambulance transported her to the emergency room at Skyline Medical Center[4]. She was there from approximately 3:00 or 4:00 p.m. until approximately 11:00 p.m. Ms. Johnson sought treatment with her primary care physician, Dr. Marcus Min, on October 29, 2014. Dr. Min wrote as the "Reason for Appointment" that Ms. Johnson "[w]as assaulted last night at walmart (sic), patient does not remember being hit, only knows patient was hit threw (sic) watching video tape" (Ex. 1, p. 1). Dr. Min excused her from work for two weeks (Ex. 1, p. 3).

Ms. Johnson testified that Walmart terminated her, and that she has been unable to secure employment since then. She testified that she meant Ms. Darden no harm and was never involved in a fight before this incident. Walmart terminated Ms. Johnson on November 6, 2014 (Ex. 11).

On cross-examination, Ms. Johnson acknowledged that she received computer-based training and in particular Walmart's "Violence-Free Workplace Policy" (Ex. 10). The "NAO Participant Checklist" (Ex. 5), dated January 7, 2014, bears her signature and confirms her receipt of the training. Ms. Johnson agreed she was aware of the policy before the incident, but maintained she did not violate the policy. She testified she did not "restrain, or attempt to restrain" Ms. Darden, but admitted that she grabbed the back of the cart and the handlebar in an attempt to stop Ms. Darden's use of the cart. Ms. Johnson acknowledged that Walmart follows an employee progressive discipline policy, and that she received a previous written warning for riding on a "cart mule" that pulls shopping carts (Ex. 9).

Ms. Johnson called Jay Sizemore, Asset Protection Manager for Walmart, as an adverse witness. Mr. Sizemore testified that he viewed the same videos admitted into evidence at the hearing before completing a "Walmart Interview Summary & Witness Statement" dated December 15, 2014 (Ex. 3). The statement outlines what he observed on the video.

Mr. Sizemore testified that any customer who wishes to use a motorized cart might do so. He said that the job description for greeters does not entail overseeing customers' use of the motorized carts, but that it "may have been deemed appropriate at the store." Mr. Sizemore testified that, in his opinion, putting one's hand on the back of a cart is not an attempt to assault, but it is "definitely infringing upon somebody's personal space and a person might be threatened, definitely." He agreed that Ms. Johnson did not strike Ms. Darden and was defending against the punch rather than throwing one. He said there was no

---

[4] Neither party introduced medical records from this provider into evidence.

4

way to tell if Ms. Johnson intentionally pulled Ms. Darden's hair. His statement reads, "You can see her hair begin to pull, as her head begins to tilt back and her knit cap begins to slide off." The statement later provides, "It is unclear if the customer's hair was pulled intentionally or not." Mr. Sizemore did not speak with Ms. Johnson about the case. On cross-examination by Walmart's counsel, Mr. Sizemore said Walmart's training for all employees prohibits touching of customers. On redirect, Mr. Sizemore said, "I can't say she intentionally did anything to the customer, but I can say she intentionally tried to get the customer off the mart cart."

Diana Henry, Walmart's Personnel Coordinator for the store where Ms. Johnson worked, also testified. Ms. Henry maintains Walmart's employment records. She testified that she personally knew Ms. Johnson and oversaw her training in January 2014. Ms. Henry confirmed that Ms. Johnson received training on the Violence-Free Workplace Policy in January and May 2014 (Ex. 6). She agreed that Walmart prohibits employees from touching customers. Ms. Henry said Walmart enforces its Violence-Free Workplace Policy; for example, Walmart terminated other employees from the same location for fighting in the parking lot. Ms. Henry did not witness the incident on the day it occurred, nor did she investigate it afterward. She testified that, in her opinion, grabbing the handlebar and seat back of the mart cart violated the policy. However, on cross-examination, Ms. Henry said she did not know whether Ms. Johnson's supervisors told her to allow only disabled persons to use the motorized carts. She acknowledged that, if Ms. Johnson was overseeing the motorized carts, she was not violating a Walmart policy. Ms. Henry testified that, from what she could see in the videos, she did not think that Ms. Johnson committed an act of violence.

To date, Walmart provided neither medical nor temporary disability benefits. Ms. Johnson filed a PBD on November 26, 2014, seeking medical and temporary disability benefits.[5] The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on December 23, 2015. On April 8, 2015, Ms. Johnson filed a Request for Expedited Hearing.

### Ms. Johnson's Contentions

Ms. Johnson's injury arose primarily out of and in the course and scope of employment with Walmart, entitling her to medical and temporary disability benefits. The imposition of penalties is appropriate as well.

### Walmart's Contentions

Ms. Johnson's injury did not arise primarily out of and in the course and scope of her employment with Walmart. Ms. Johnson's claim is not compensable because she engaged in

---

[5] Ms. Johnson additionally sought discovery, but it appears the parties resolved the discovery-related issue(s).

willful misconduct. Walmart properly denied the claim.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

"The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer." Tenn. Code Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that, "[u]nless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2014); *cf. McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

### *Factual Findings*

On October 28, 2014, while attempting to prevent a customer's use of a motorized cart, Ms. Johnson suffered an injury when a Walmart customer, Ms. Darden, struck her in the face. Ms. Johnson did not intentionally pull Ms. Darden's hair or otherwise touch her. Ms. Johnson sought unauthorized medical care from Dr. Min, who excused her from work for two (2) weeks.

### *Application of Law to Facts*

*The Court denies Walmart's Motion to Dismiss at this time.*

As an initial matter, in "Employer's Brief Opposing Employee's Petition for Benefit Determination and Motion to Dismiss Petition for Benefit Determination," Walmart moved to dismiss Ms. Johnson's PBD on two grounds.

First, Walmart argued that Ms. Johnson failed to timely request an Expedited Hearing upon the filing of her Dispute Certification Notice. Rule 0800-02-21-.12(1) states:

> Immediately after a dispute certification notice has been filed with the clerk, either party seeking further resolution of any disputed issues shall file a request for hearing with the clerk... .

6

> If no request for hearing is filed within sixty (60) calendar days after the date of issuance of the dispute certification notice, the clerk shall docket the case and place the case on a separate dismissal calendar for a show cause hearing. The clerk shall send notice of the hearing to the parties, via regular or electronic mail, indicating the claim number, the time of the hearing and the judge assigned to the case. Either party may appear to show cause as to why the case should not be dismissed.

Tenn. Comp. R. & Regs., Rule 0800-02-21-.12(1)(2014). The sixty- (60) day requirement is not jurisdictional in the sense that a hearing request is mandatory to the Court having continued ability to adjudicate a claim. In other words, failure to file a request for a hearing is not fatal to continued prosecution of the case on the merits. Rather, as the second sentence of the rule suggests, the sixty- (60) day requirement allows the Court to ensure that a case timely proceeds through the system on the merits rather than it meeting its demise upon a procedural technicality. If neither side seeks further resolution within the sixty- (60) day timeframe, it prompts the clerk to schedule a show cause hearing, so that the Court may determine if the parties intend to take further action in the case. This is precisely what occurred in this matter. Specifically, on April 8, 2015, the Court conducted a Show Cause Hearing, at which time Ms. Johnson, through Counsel, communicated an intention to prosecute her claim. Accordingly, the Court ordered her to file a Request for Expedited Hearing forthwith and scheduled a hearing date. Ms. Johnson complied with the Order.

Second, Walmart moved the Court to dismiss Ms. Johnson's case for failure to submit an affidavit with the Request for Expedited Hearing. Counsel for Walmart argued that Rule 0800-02-21-.14(1)(a) requires a party to submit affidavits with a Motion for Expedited Hearing. Since Ms. Johnson failed to submit any affidavits with her Motion for Expedited Hearing, Walmart requested the Court dismiss her Motion for Expedited Hearing.

The Court denied the motion at the Expedited Hearing. Subsequently, The Tennessee Workers' Compensation Appeals Board issued an opinion concluding that Rule 0800-02-21-.14(1)(a) requires the filing of an affidavit. *Hadzic v. Averitt Express,* No. 2014-02-0064 (Tenn. Work. Comp. App. Bd., May 18, 2015). Based upon the opinion, the Court conducted a teleconference with Counsel for the parties on May 19, 2015, to advise them of the Appeals Board's ruling. Counsel for Walmart requested time to consider the opinion and confer with his client regarding how to proceed. On May 22, 2015, Walmart informed the Court that, in the interests of judicial economy, as proof was already presented in this matter, it would strike its Motion to Dismiss as related to the issue of the lack of a contemporaneous affidavit filed with the Request for Expedited Hearing, to allow the Court to enter its decision. The Court designated this communication as part of the Technical Record.

*Ms. Johnson sustained an injury that arose primarily out of and in the course and scope of her employment with Walmart.*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment ... ." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The Tennessee Supreme Court has consistently held that, in order to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (*quoting Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).

With particular regard to workplace assaults, the Tennessee Supreme Court recognized the following three categories:

(1) Assaults with an "inherent connection" to employment, such as disputes over performance, pay, or termination;

(2) Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and,

(3) Assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

8

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). The Supreme Court explained in *Woods* that:

> [A]ssaults resulting from a "neutral force" such as random assaults may, or may not be compensable depending on the facts and circumstances of the employment. *See Beck v. State,* 779 S.W.2d 367 (Tenn. 1989) (where employment necessarily exposes employee to public risks, random assault from third party is compensable).

*Woods,* 967 S.W.2d at 771-772. A neutral force assault is one that is neither personal to the claimant nor distinctly associated with the employment. *Wait v. Travelers Indem. Co.*, 240 S.W.3d 220, 228 (Tenn. 2007). In limited circumstances, where the employment involves indiscriminate exposure to the general public, the street risk doctrine may supply the required causal connection between the employment and the injury. *Id.* The street risk doctrine provides that if the employment exposes the employee to the hazards of the street, it is a risk or danger incident to and inherent in the employment and provides the necessary causal connection between the employment and the injury. *Id.* The employee's visible identification with his employment and his responsibility as custodian of his employer's valuable property may provide a sufficient nexus between the assault and the employment. *Id.* at 229.

In this case, Ms. Johnson credibly testified that, on October 28, 2014, while performing her duties as she understood them, a customer struck her in the face. She offered sufficient detail regarding the time, place and circumstances of the incident, which occurred while performing a duty she was employed to do – greet patrons and oversee use of the motorized carts. Ms. Johnson's injury bears a rational connection to her work because her employment necessarily exposed her to public risks, to include random assaults from third parties. The assault was not personal to Ms. Johnson because she and Ms. Darden did not know each other before the altercation. The assault is not distinctly associated with employment as a greeter. However, Ms. Johnson's employment exposed her to the hazards of the street because, as may be seen on the videos, she wears clothing and a name tag that visibly identify her as a Walmart employee, and the genesis of the altercation was Ms. Johnson fulfilling her responsibility as a custodian of Walmart's valuable property, the motorized carts.

Walmart argued Ms. Johnson was not performing a duty contained in the written job description for greeters. However, Walmart presented no evidence to contradict Ms. Johnson's assertion that her supervisors, including "Anthony" and Mr. Morgan, verbally required her to oversee the motorized carts. Mr. Sizemore testified that such a task "may have been deemed appropriate" at that particular location, while Ms. Henry testified that she did not know whether Ms. Johnson's supervisors told her to allow only disabled persons to

9

use the motorized carts.

*Ms. Johnson did not engage in willful misconduct at the time of her injury.*

Walmart further argues that Ms. Johnson's claim is noncompensable because Ms. Johnson engaged in willful misconduct. Tennessee Code Annotated section 50-6-110(a) (2014) provides in subsection (1) that no compensation shall be allowed for an injury due to the employee's "willful misconduct." If an employer defends on the grounds that the injury arose from willful misconduct, the burden of proof is on the employer to establish the defense. Tenn. Code Ann. § 50-6-110(b) (2014). To meet its statutory burden of proof to establish the defense of willful misconduct, an employer must prove the following four elements:

(1)     the employee's actual, as opposed to constructive, notice of the rule;
(2)     the employee's understanding of the danger involved in violating the rule;
(3)     the employer's bona fide enforcement of the rule; and
(4)     the employee's lack of a valid excuse for violating the rule.

*Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012).

In the instant case, the Court finds that Ms. Johnson did not violate the Violence-Free Workplace Policy. The video does not clearly show her touching Ms. Darden. Rather it shows her touching the cart's handlebar and the back of the seat. Mr. Sizemore, in his written statement and testimony, could not say with certainty that Ms. Johnson pulled Ms. Darden's hair or touched her in any way. Ms. Johnson credibly testified that she did not touch Ms. Darden. Further, at the hearing, it was particularly compelling to the Court that Ms. Henry testified that, from what she could see in the videos, she did not think that Ms. Johnson committed an act of violence.

Assuming, arguendo, that Ms. Johnson did touch Ms. Darden and/or commit some other act in violation of the policy, Walmart's willful misconduct defense still fails because Walmart did not meet its burden of proving each of the four *Mitchell* elements necessary to deny the claim. In particular, Walmart did not prove that Ms. Johnson lacked a valid excuse for violating the rule. As previously noted, Ms. Johnson testified that at least two supervisors told her that overseeing the motorized carts was one of her job duties. Walmart offered no contradictory evidence. In sum, Ms. Johnson has satisfied her burden of establishing she would likely prevail at a hearing on the merits because Walmart failed to satisfy its burden with regard to its asserted willful misconduct defense.

10

*Ms. Johnson is entitled to medical benefits, and in particular a panel of physicians, and is entitled to past temporary total disability benefits for 14 days.*

Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The statute further requires:

> …[I]n any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community… from which the injured employee shall select one (1) to be the treating physician.

Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2014).

To date, Walmart has not complied with the statutory requirement that it designate a panel from which Ms. Johnson may select a treating physician. Instead, Walmart denied the claim. Ms. Johnson sought treatment from unauthorized providers, both prior to and after the denial. Because of the nature of the denial, she seeks penalties.

The Workers' Compensation Appeals Board recently summarized an employer's duty to provide medical benefits as follows:

> The mere notice of an alleged workplace accident, in and of itself, does not trigger an employer's duty to provide medical benefits in every case, without regard to the particular circumstances presented. If an employer chooses to deny the claim following its initial investigation, the employee must come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable "injury by accident" at a hearing on the merits in accordance with section 50-6-239(d)(1). Conversely, an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner.

*McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015).

In the case at bar, Ms. Johnson has come forward with sufficient evidence from which this Court determined that she likely will prove a compensable injury by accident at a hearing on the merits in accordance with section 50-6-239(d)(1). The Court is authorized to order medical benefits under that same provision. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2014). Accordingly, the Court orders that Walmart designate a panel of physicians from which Ms. Johnson shall have the privilege of selecting the authorized provider.

The Court is without sufficient evidence to order payment of the medical expenses of either Dr. Min or any other providers at this time. The Tennessee Supreme Court held that an employee must establish the necessity and reasonableness of non-authorized charges in order to recover such expenses. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004). In this matter, the Court marked Exhibit 4, "Medical Bills & Expenses for Eden Johnson," for identification purposes only but did not admit it into evidence. Ms. Johnson offered insufficient evidence of the necessity and reasonableness of charges at this interlocutory stage of the case.

With regard to whether Walmart may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner, the Workers' Compensation Law authorizes the Division to assess penalties for the failure to timely provide a panel. *See* Tenn. Code Ann. § 50-6-118(a)(12) (2014). This Court does not possess the authority to impose penalties; rather, pursuant to the statute and the Rules of the Division of Workers' Compensation, this task falls under the purview of the Division's Penalty Program. *See* Tenn. Comp. R. & Regs., 0800-02-13-.02(1). The Court notes that, upon its issuance, a copy of this Order will be provided to the Penalty Program in accordance with Tenn. Comp. R. & Regs., 0800-02-24-.03 (2015) ("In addition to referrals made by a workers' compensation judge, any Division employee may refer any person or entity to the penalty program for the assessment of a civil penalty whenever the referring employee believes that there may have been a violation of the Division's rules or the Tennessee Workers' Compensation Act."). The Court reasonably believes there may have been a violation of the Division's rules.

The Court turns now to Ms. Johnson's request for temporary total disability (TTD) benefits. The Dispute Certification Notice lists her request for temporary partial disability benefits only. At the Expedited Hearing, however, the parties agreed on the record that Ms. Johnson was seeking either temporary total or partial disability benefits.

To establish such an entitlement as contemplated in Tennessee Code Annotated section 50-6-207(1), an employee must show that (1) the employee was totally disabled from working as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's total disability. *Gray v. Cullom Mach., Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004). Except in "the most obvious, simple and routine cases," an employee must establish by expert medical testimony that an injury occurred and that there exists a causal

relationship between the injury and the employment activity. *Wheetley v. State,* 2014 Tenn. LEXIS 476, No. M2013-01707-WC-R3-WC (Tenn. Workers' Comp. Panel, June 25, 2014) (*citing Excel Polymers, LLC v. Broyles,* 302 S.W.3d 268, 274 (Tenn. 2009).

In this case, on October 29, 2014, the day after the incident, Dr. Min excused Ms. Johnson from work for two weeks (Ex. 1, p. 3). Therefore, she met her burden with regard to proving total disability and its duration. Although Dr. Min's records do not contain an explicit statement regarding the causal connection between the injury and her inability to work, Dr. Min listed the assault as the "Reason for Appointment." The Court characterizes this case as "obvious, simple and routine," so that an explicit finding from the medical evidence is unnecessary.

The Court finds that Ms. Johnson is entitled to past temporary total disability benefits for the two- (2) week period. However, Ms. Johnson did not introduce into evidence proof of her past wages or compensation rate. Therefore, the Court is without sufficient evidence to calculate the award for past TTD benefits. In the interest of judicial economy, the Court directs the parties to confer and determine the compensation rate. Walmart shall forthwith pay two (2) weeks of TTD benefits at the agreed upon rate. With regard to Ms. Johnson's request for TTD benefits beyond the two-week timeframe, at this interlocutory stage, she has not offered sufficient proof of entitlement under the *Gray* factors, and therefore, at this time, her request is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Walmart or its workers' compensation carrier shall provide Ms. Johnson with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204, to be initiated by Walmart or its workers' compensation carrier providing Ms. Johnson with a panel of physicians as required by that statute. Ms. Johnson or the providers shall furnish all billings to Walmart, which shall pay said bills pursuant to the applicable fee schedule. Walmart is not obligated to pay for any past medical expenses at this time.

2. The parties shall confer regarding making a determination of Ms. Johnson's compensation rate so that Walmart shall forthwith pay temporary total disability benefits for 14 days, from October 29, 2014, through November 12, 2014.

3. Ms. Johnson's request for additional temporary total disability benefits is denied at this time.

4. By copy of this Expedited Hearing Order, this matter is referred to the Penalty Program for review of possible penalties regarding Walmart's failure to provide a panel of physicians.

5. This matter is set for Initial Hearing on July 14, 2015, at 10:00 a.m.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 26th day of May, 2015.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

14

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Tim Bowden, Employee's attorney | | | | | x | Bowden11lydia@gmail.com; Bowden_law@bellsouth.net |
| Jay Johnson, Employer's attorney | | | | | x | jay@jayjohnsonlawfirm.com |
| Penalty Program | | | | | x | WCCompliance.Program@tn.gov |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

15